ROBERT SAUNDERS, Plaintiff-Appellant, v. VIRAT
KLUNGBOONKRONG *et al.*, Defendants-Appellees.

Fifth District No. 5—85—0693

Opinion filed December 1, 1986.

Charles H. Stegmeyer, of Belleville, for appellant.

Richard F. Record, Jr., and Paul R. Lynch, both of Craig & Craig, of Mattoon, for appellee Virat Klungboonkrong.

Freeark, Harvey & Mendillo, of Belleville (Ray Freeark, Jr., and Ransom P. Wuller, of counsel), for other appellee.

JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Robert Saunders, appeals from a judgment of the circuit court of Perry County dismissing his action against defendants, Dr. Virat Klungboonkrong (hereinafter Dr. Klung) and Marshall Browning Hospital, for medical malpractice on the ground that plaintiff's cause of action was barred by the applicable statute of limitations. We reverse and remand.

In 1967 plaintiff fractured his left humerus and collarbone in an automobile accident. A metal plate was ultimately used to repair the humerus.

In November of 1978, plaintiff began experiencing numbness in his left hand when it was exposed to cold weather. Plaintiff was referred to Dr. Klung by Marshall Browning Hospital for treatment. Dr. Klung determined plaintiff had Raynaud's disease or phenomenon, a vasospastic disorder of the blood vessels, possibly caused by the old fracture site of plaintiff's humerus or by plaintiff's mild diabetic condition.

Prior to April of 1981, plaintiff saw Dr. Klung on at least one other occasion for the same condition. On April 26, 1981, plaintiff went to the emergency room at Marshall Browning Hospital complain-

ing of numbness and aching in his left arm and hand and that both had turned white and red. Dr. Klung was called. Believing plaintiff was probably suffering from the same problem as before, Dr. Klung prescribed two vasodilating agents for plaintiff. Plaintiff's condition improved soon thereafter without having taken any medication.

Shortly after midnight on April 28, 1981, plaintiff began experiencing excruciating pain in his left hand. The hand was white and cold. Plaintiff called Dr. Klung, who told him to take the prescribed medicine. At approximately 2 a.m., plaintiff's wife telephoned Dr. Klung to inform him the medication had not been effective. She told her husband that Dr. Klung said for him to relax and give the medication time to work. At 4:40 a.m., plaintiff again went to the emergency room of Marshall Browning Hospital. The nurse on duty telephoned Dr. Klung and then admitted plaintiff to the hospital. At approximately 9:30 a.m., Dr. Klung came to see plaintiff in the hospital. Dr. Klung made a visual observation of the arm and left the room. He returned a few minutes later stating he was transferring plaintiff to St. Louis University. Plaintiff left Marshall Browning Hospital by ambulance at 11:50 a.m.

Doctors Gary Peterson and Lawrence McBride examined plaintiff on April 29, 1981, at Firmin Desloge Hospital. Dr. McBride concluded plaintiff's left hand and forearm were markedly ischemic with irreversible tissue changes. He informed plaintiff that he would probably lose his arm "in light of the duration of the signs and symptoms." On May 11, 1981, plaintiff's left hand was amputated.

During a subsequent hospitalization in March of 1982, plaintiff learned for the first time from Dr. Peterson that a person can only experience ischemia for four to six hours before the dying of tissue begins. As a result of this conversation, plaintiff realized he should have been transported to St. Louis sooner and that either Dr. Klung or Marshall Browning Hospital was the cause of his amputation. Plaintiff filed suit against Dr. Klung and Marshall Browning Hospital on December 16, 1983.

Both Dr. Klung and Marshall Browning Hospital filed motions for summary judgment arguing plaintiff's cause was barred by the two-year medical-malpractice statute of limitations (Ill. Rev. Stat. 1979, ch. 83, par. 22.1 (subsequently codified as Ill. Rev. Stat. 1983, ch. 110, par. 13—212)). The trial court found the statute of limitations began to run on May 11, 1981, the date of plaintiff's amputation, and therefore plaintiff's complaint was untimely filed. The trial court granted both defendants' motions for summary judgment after having found no genuine issue as to any material fact.

Plaintiff argues on appeal the two-year statute of limitations does not bar his cause of action in this instance because the period begins to run only when there is a concurrence of the actual or constructive knowledge of both the physical problem and the possibility that someone is at fault for its existence. Plaintiff contends this "concurrence" occurred in March of 1982 when he first learned of the critical time element for effective treatment of ischemia. Plaintiff further argues that whether he had knowledge or reasonably should have had knowledge of his injury and cause of action prior to March 1982 was a question of fact to be determined by the trier of fact and should not have been disposed of by summary judgment.

 █ Section 21.1 of "An Act in regard to limitations" (Ill. Rev. Stat. 1979, ch. 83, par. 22.1), subsequently codified as section 13—212 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 13—212), provides:

> "No action for damages for injury or death against any physician *** or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death ***."

Under this statute, a plaintiff must bring his action within two years of the date on which he knew or reasonably should have known of his injury in order to maintain a cause of action for damages. Case law has interpreted this to mean that the period begins to run when the plaintiff knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. (*E.g., Aspegren v. Howmedica, Inc.* (1984), 129 Ill. App. 3d 402, 403, 472 N.E.2d 822, 824; *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 710, 375 N.E.2d 934, 938. See also *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 415, 430 N.E.2d 976, 979-80; *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171, 421 N.E.2d 864, 868.) "Wrongfully caused," however, does not mean knowledge of a specific defendant's negligent conduct or knowledge that an actionable wrong was committed. (*Bates v. Little Co. of Mary Hospital* (1982), 108 Ill. App. 3d 137, 140, 438 N.E.2d 1250, 1253; *Gaudynski v. Corbett* (1980), 81

Ill. App. 3d 910, 913-14, 401 N.E.2d 1218, 1220. See also *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 170-71, 421 N.E.2d 864, 868.) Rather, a plaintiff knows or should know his injury was "wrongfully caused" when he "becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 416, 430 N.E.2d 976, 980-81; see also *Bates v. Little Co. of Mary Hospital* (1982), 108 Ill. App. 3d 137, 140, 438 N.E.2d 1250, 1253.

■■ In determining when a plaintiff knew or reasonably should have known that his injury was caused by a defendant's wrongful conduct, courts often look to the nature of the injury itself. (See *Kristina v. St. James Hospital* (1978), 63 Ill. App. 3d 801, 813, 380 N.E.2d 816, 818-19.) If the injury is traumatic in nature, that is, immediate and caused by an external force or violence, the plaintiff knows or should know of his right to sue when injured. (*Pszenny v. General Electric Co.* (1985), 132 Ill. App. 3d 964, 966, 478 N.E.2d 485, 487; *Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 486, 473 N.E.2d 1322, 1342.) The more obvious the injury, the more easily a plaintiff should be able to determine its cause. (*Pszenny v. General Electric Co.* (1985), 132 Ill. App. 3d 964, 966, 478 N.E.2d 485, 487; *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 711, 375 N.E.2d 934, 938.) If the injury is, however, an aggravation of a physical problem which may naturally develop, absent negligent causes, a plaintiff is not expected to immediately know of either its existence or potential wrongful cause. (*Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 486, 473 N.E.2d 1322, 1342. See also *Pszenny v. General Electric Co.* (1985), 132 Ill. App. 3d 964, 967, 478 N.E.2d 485, 488; *Lutes v. Farley* (1983), 113 Ill. App. 3d 113, 116, 446 N.E.2d 866, 868.) Until the plaintiff knows or should know that his condition, seemingly innocent in causation, is perhaps the result of another's negligent acts, he has had no opportunity to discover that a cause of action exists. (*Roper v. Markle* (1978), 59 Ill. App. 3d 706, 714, 375 N.E.2d 934, 940.) The limitations period begins to run when the plaintiff becomes aware that the cause of his problem stems from another's negligence and not from natural causes. 59 Ill. App. 3d 706, 715, 375 N.E.2d 934, 941.

■ We agree with the plaintiff that in this instance the amputation of his hand, although a traumatic event, was not a traumatic injury as contemplated by the statute and case law. Plaintiff had been experiencing numbness in his left arm and hand for several years. Neither the treating physician, Dr. Klung, nor the doctors at St. Louis University completely knew the cause of plaintiff's complaints. Dr.

Klung speculated plaintiff's circulatory problem may have stemmed from the metal plate used to repair his left humerus or perhaps from his mildly diabetic condition or from some unknown factor. Plaintiff had no reason to believe the removal of his hand was necessitated by anything other than nonnegligent organic causes. The doctors at St. Louis University only told plaintiff he would probably lose his arm "in light of the duration of the signs and symptoms." Plaintiff had no way of knowing the doctors were referring to the delay in treating his hand and arm on the morning of April 28, 1981. It was reasonable for plaintiff to believe the doctors were referring to the length of time he had been having the numbness problem in general. It was not until March of 1982 that plaintiff learned of the critical four- to six-hour period in which treatment must be given to avoid dying tissue. Plaintiff was given no suggestion prior to March 1982 that the amputation may have been the result of another's act or omission; he had not been put on inquiry to determine whether actionable conduct was involved. While plaintiff knew of his injury, he did not know or reasonably should not have known of its wrongful causation to trigger the limitations period. See, *e.g.*, *Watkins v. Health & Hospitals Governing Com.* (1979), 78 Ill. App. 3d 468, 472-73, 397 N.E.2d 228, 231-32; *Lind v. Zekman* (1979), 77 Ill. App. 3d 432, 438, 395 N.E.2d 964, 968.

■ More importantly, whether plaintiff knew or reasonably should have known of his injury and that it was caused by the wrongful acts of another are genuine issues of fact to be determined by the trier of fact. (See *Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 487, 473 N.E.2d 1322, 1342; *Martinez v. Rosenzweig* (1979), 70 Ill. App. 3d 155, 165, 387 N.E.2d 1263, 1271; *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 714, 375 N.E.2d 934, 940.) Summary judgment is appropriate only where the leadings, depositions, and affidavits, construed most strongly against the movant and most liberally in favor of the opponent, show that judgment should be granted as a matter of law. (*Aspegren v. Howmedica, Inc.* (1984), 129 Ill. App. 3d 402, 403-04, 472 N.E.2d 822, 824.) If only one conclusion can be drawn from the undisputed facts, the question of the timeliness of the plaintiff's complaint is for the court to decide. (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874; *Lutes v. Farley* (1983), 113 Ill. App. 3d 113, 115, 446 N.E.2d 866, 868.) When reasonable persons may fairly draw differing inferences from those facts which are not in dispute, the motion must be denied. (*Carter v. Dunlop* (1985), 138 Ill. App. 3d 58, 63, 484 N.E.2d 1273, 1277; *Aspegren v. Howmedica, Inc.* (1984), 129 Ill. App. 3d 402, 404, 472 N.E.2d 822, 824; *Buck v. Alton Memorial Hospital* (1980), 86 Ill. App. 3d 347, 352, 407 N.E.2d 1067, 1071.)

Here, differing inferences could reasonably be drawn from the undisputed facts. At what point plaintiff knew or should have known of the injury and its possible wrongful cause is not certain. Plaintiff obviously knew his hand had been amputated, and he knew he probably would lose his arm "in light of the duration of the signs and symptoms." But, the significance of that statement is disputed. And, whether plaintiff should have been put on notice from the mere fact of amputation itself is at issue. No one conclusion can be drawn in favor of defendants. The reasonableness of plaintiff's knowledge or lack thereof is a question for the trier of fact. "The right of a moving party for a summary judgment must be clear and free from doubt." (*Lind v. Zekman* (1979), 77 Ill. App. 3d 432, 438, 395 N.E.2d 964, 968.) It is neither clear nor free from doubt in this instance.

For the foregoing reasons, we reverse the judgment of the circuit court of Perry County and remand for further proceedings consistent with this opinion.

Reversed and remanded.

HARRISON and WELCH, JJ., concur.