JUDY B. GARA, Plaintiff-Appellant, v. EMANUEL SEMERAD *et al.*, Defendants-Appellees (Ben W. Lichtenstein *et al.*, Defendants).

First District (1st Division)   No. 1—87—2505

Opinion filed May 15, 1989.

Robert W. Karr & Associates, Ltd., and Sidney Z. Karasik, both of Chicago (Robert W. Karr, Marion A. Morawicz, and Jill Kline, of counsel), for appellant.

Connelly, Mustes & Palmer, of Chicago (John J. Mustes and John R. Ostojic, of counsel), for appellee Helge G. Frank.

Rooks, Pitts & Poust, of Chicago (Terrence J. Madden and Jill M. Rappis, of counsel), for appellee Emanuel Semerad.

Wildman, Harrold, Allen & Dixon, of Chicago (Ruth E. VanDemark, of counsel), for appellee David M. Shenker.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (Russell P. Veldenz, of counsel), for appellee John F. Gleason.

JUSTICE QUINLAN* delivered the opinion of the court:

On January 2, 1982, the plaintiff, Judy Gara, was injured in an accident at Alexian Brothers Medical Center, where she was employed as a nurse. On October 5, 1984, plaintiff filed a professional negligence lawsuit against various physicians and hospitals for their al-

---

*Justice Quinlan participated in this decision prior to his assignment to the sixth division.

leged failure to diagnose and properly treat the injury she sustained as a result of the accident on January 2, 1982. Included as defendants in the lawsuit were Drs. Semerad, Gleason, Shenker and Frank. Drs. Semerad, Shenker and Frank moved for summary judgment, and Dr. Gleason moved to dismiss plaintiff's complaint. All of the doctors' motions were based on the argument that the plaintiff's claim was barred by the applicable statute of limitations, which they asserted required that the plaintiff bring her suit within two years of the date of her injury or the discovery of her cause of action. The plaintiff, they claimed, had discovered her cause of action more than two years before the time she had filed her complaint. The trial judge agreed and ruled that the plaintiff's claim was time barred, granted the motions of Drs. Semerad, Gleason, Shenker, and Frank, and subsequently denied plaintiff's motion for reconsideration. The plaintiff has now appealed to this court. We reverse and remand.

On January 2, 1982, the plaintiff injured her arm, neck and back in an accident while she was working at Alexian Brothers Medical Center. She immediately went to the emergency room at Alexian Brothers for treatment, and the emergency room physician treated her and told her to make an appointment in a few days with an orthopedist, Dr. Semerad. The plaintiff then, as the emergency room physician had recommended, took off some time from work. A few days later, she made an appointment and saw Dr. Semerad, and in February 1982, Dr. Semerad performed certain tests on plaintiff, the results of which were negative. He then prescribed a course of treatments, which only made plaintiff's condition worse. In fact, during this time plaintiff's condition continued to deteriorate, and the muscle spasms she had been experiencing became more painful. Although plaintiff returned to work, she was unable to perform any tasks that required excessive lifting or stretching, and, in addition, she was unable to drive due to the pain. Eventually, plaintiff became suspicious about the nature of her condition since she was not improving.

In May or June of 1982, plaintiff's friend, Mrs. Fox, who was the director of employee health at Alexian Brothers, told plaintiff that she did not agree with Dr. Semerad's treatment of plaintiff and recommended that the plaintiff see Dr. Gleason, another orthopedist. Plaintiff set up an appointment with Dr. Gleason and first saw him on June 11, 1982. After examining the plaintiff and viewing her X rays, Dr. Gleason criticized Dr. Semerad's failure to perform certain tests on the plaintiff; however, in the course of plaintiff's several visits to Dr. Gleason, he never performed these tests on the plaintiff either. The plaintiff thought that Dr. Gleason's conduct was unusual, but when

she asked Dr. Gleason about it, he laughed at her inquiry. Furthermore, the treatment recommended by Dr. Gleason did not improve her condition, but only caused her more pain, and during this period of his treatment, her condition continued to deteriorate.

On July 3, 1982, the plaintiff fell and injured herself again. Plaintiff took time off from work after this accident and in mid-July 1982, she again went to see Dr. Gleason for treatment. Although she believed that her condition had not improved, Dr. Gleason told her that she should return to work and attempt to forget about the pain. Dr. Gleason also recommended that plaintiff see a neurologist, Dr. Shenker.

Subsequently, sometime in July 1982, plaintiff went to see Dr. Shenker. Dr. Shenker performed one test on plaintiff, the results of which, he told plaintiff, were normal. After performing that test, he did not perform any further tests, nor did he suggest any further treatments or visits, but instead told plaintiff that she was a malingerer and a faker, and suggested that she only wanted a false report from him so that she could obtain an inflated worker's compensation settlement. Meanwhile, plaintiff's condition still continued to deteriorate. The plaintiff then began to see Dr. Semerad once again. Dr. Semerad told her, at that time, that she had either a neurological problem or a collagen disease, both of which were serious problems, and referred her to another neurologist.

On Dr. Semerad's recommendation, plaintiff then went to see Dr. Frank, another neurologist, in August of 1982, and he told her that she had a neurological deficit. Dr. Frank criticized both Dr. Gleason's and Dr. Shenker's treatment of plaintiff. After her last visit with Dr. Frank, Dr. Frank called plaintiff's husband and told him that he was concerned about plaintiff's mental health and suggested that her husband should take her on a vacation.

Plaintiff then, on August 25, 1982, returned to Dr. Semerad, who told her that he was signing off of her case because he could not find any orthopedic problem. Dr. Semerad, however, offered to write a letter of recommendation to Mayo Clinic on her behalf. Later, her employer's insurance company informed her that a visit to Mayo Clinic would not be covered under her insurance plan. On September 7, 1982, the plaintiff went to see Dr. Melen, a neurologist at Northwestern Memorial Hospital, who examined her and told her that he did not agree with the prior treatments she had received from Dr. Semerad.

Soon after her visit with Dr. Melen, plaintiff went to see Dr. Lichtenstein, a doctor that her insurance company suggested she see, and

he was critical of all of the doctors that had previously treated the plaintiff, including Drs. Semerad, Gleason, Shenker and Frank, and the entire staff at Northwestern Memorial Hospital as well. Dr. Lichtenstein's criticisms of the defendant doctors' treatment and diagnoses of the plaintiff were in the nature of broad, generalized statements that their treatments were improper and inappropriate, or that they did not do proper diagnostic work-ups. The remainder of Dr. Lichtenstein's criticisms, plaintiff said, were directed towards the personal reputations of the doctors, and included observations that certain of the defendant doctors were "big gun" doctors for her employer's insurance company and were known to falsify reports. Plaintiff stated that she believed these observations by Dr. Lichtenstein to be "off base."

After seeing Dr. Lichtenstein, the plaintiff continued to experience pain, and, accordingly, she continued to see various other doctors. In September 1983, she went to visit her family doctor, Dr. Rittman, who she claims accurately diagnosed her initial injury from her fall in January of 1982 as a cervical spine injury. Ultimately, the plaintiff had surgery on her elbow and shoulder for this condition.

On October 5, 1984, plaintiff filed her cause of action for medical malpractice against the defendant doctors for the aggravation of her injuries. Drs. Semerad, Shenker and Frank, as noted earlier, filed motions for summary judgment and Dr. Gleason filed a motion to dismiss, all of which were based on their contention that plaintiff had discovered her cause of action prior to October 5, 1982, and that, therefore, her claim was time barred. Also, as observed above, the trial court granted the defendants' motions and subsequently denied plaintiff's motion to reconsider.

The sole issue raised by plaintiff on appeal is whether the trial court erred when it found that the plaintiff had discovered her cause of action prior to October 5, 1982, and accordingly ruled that her claim was time barred. Plaintiff contends here that the trial court erred when it found that she had discovered her cause of action prior to October 5, 1982. She argues that, contrary to the determination of the trial court, she did not discover her cause of action until after October 5, 1982. The fact that she had recognized that she had been improperly diagnosed, as well as her awareness of her worsening symptoms, both of which occurred prior to October 5, 1982, did not amount, she asserts, to a discovery of her claim. Moreover, she continues, if the doctors could not properly and accurately diagnose her condition prior to October 5, 1982, then there was no way for her to properly assess her specific injuries, or the aggravation of her injuries

and, thus, there was no way for her to know that such an injury was wrongfully caused prior to that date. Consequently, she claims, she could not have alleged any demonstrable injury in a lawsuit based on medical malpractice prior to October 5, 1982. At oral argument before this court, the plaintiff contended that the actual date of discovery was in September 1983, when her family doctor accurately diagnosed her condition. Hence, she concludes that she had until September 1985 to timely file her claim and that her complaint was filed well before that time.

Plaintiff further argues that the mere fact that she asked the defendant doctors questions about the nature and basis of her injury was an insufficient basis for the trial court to conclude that she knew or reasonably should have known of her injury and that it was wrongfully caused before October 5, 1982, as a matter of law. Also, she asserts, the evidence here showed that the doctors repeatedly assured her prior to October 5, 1982, that her condition was improving and was not of a serious nature. Under these circumstances, she contends, her medical training is irrelevant because she is only a nurse, not a doctor, and thus she was unable to determine the true nature of her condition. Plaintiff further argues that Dr. Lichtenstein's express criticisms of the defendants' care and treatment of her on September 20, 1982, were insufficient to trigger the running of the statute of limitations because these comments were general in nature. Thus, she claims that the facts did not support the trial court's determination that she knew or reasonably should have known that her condition was wrongfully caused prior to October 5, 1982, and concludes that the trial court erred when it ruled that her claim was time barred.

The defendants, on the other hand, argue that the trial court properly dismissed plaintiff's claim as being time barred because, they assert, the plaintiff in fact did know or reasonably should have known, prior to October 5, 1982, that she suffered from an injury or an aggravation of an injury that was wrongfully caused. The defendants contend that the facts here undisputedly show that prior to October 5, 1982, the plaintiff knew her condition was continually worsening, that as a nurse, she was suspicious of the various doctors' diagnoses and prescribed treatments, and that certain of the doctors criticized the personal reputation and the work of other of the defendant doctors in their conversations with the plaintiff. Based upon these undisputed facts, the defendants assert, the trial court properly found that plaintiff's claim was time barred as a matter of law.

■ The statute of limitations applicable to this case is set forth in section 13—212 of the Code of Civil Procedure, and provides:

"[N]o action for damages for injury or death against any physician *** arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known *** of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first ***." (Ill. Rev. Stat. 1987, ch. 110, par. 13—212(a).)

Our supreme court, in *Witherell v. Weimer*, stated that the statute of limitations, there in a medical malpractice case, begins to run when a person knows or reasonably should have known of his injury and, also, knows or reasonably should have known that the injury was wrongfully caused. (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874.) This rule is commonly referred to as the discovery rule and has been applied by our supreme court in various fact-situations. See *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 421 N.E.2d 864; *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976.

In examining the discovery rule, our supreme court has held that when a party knows or reasonably should have known both that an injury occurred and that it was wrongfully caused, then, at that point, the party has an obligation to inquire further to determine whether an actionable wrong has been committed. (*Knox College*, 88 Ill. 2d 407, 430 N.E.2d 976.) Both the *Nolan* and *Witherell* cases clearly noted that the term "wrongfully caused" does not mean knowledge of negligent conduct or knowledge of the existence of a cause of action. (*Knox College*, 88 Ill. 2d 407, 430 N.E.2d 976; see also *Nolan*, 85 Ill. 2d 161, 421 N.E.2d 864; *Witherell*, 85 Ill. 2d 146, 421 N.E.2d 869.) Rather, the term refers to that point in time when the injured person becomes possessed of sufficient information concerning his or her injury and its cause so that a reasonable person would be put on notice to determine whether actionable conduct was involved, and, under the discovery rule, it is at this point in time when the statute of limitations commences. *Knox College*, 88 Ill. 2d 407, 430 N.E.2d 976.

The question of when a party knew or reasonably should have known both of the injury and that it was wrongfully caused is one of fact. (*Tobias v. Winkler* (1987), 156 Ill. App. 3d 886, 893, 509 N.E.2d 1050, 1054.) In most cases, therefore, the time at which a party knows or reasonably should have known both of his injury and that it was wrongfully caused will be a disputed question to be resolved by the trier of fact, and only in the situation where the facts are undisputed, and it is apparent from those facts that only one conclusion

can be drawn, the question becomes one for the court. (*Witherell*, 85 Ill. 2d at 156, 421 N.E.2d at 874; *Saunders v. Klungboonkrong* (1986), 150 Ill. App. 3d 56, 61, 501 N.E.2d 882, 886.) In order for such a determination to be made by the court, the record must contain sufficient facts to support such a determination. *Flores v. St. Mary of Nazareth Hospital* (1986), 149 Ill. App. 3d 371, 378, 502 N.E.2d 1, 5.

■ In determining whether a plaintiff knew or reasonably should have known that the injury was caused by the defendant's wrongful conduct, courts look to the specific nature of the injury. (*Saunders v. Klungboonkrong* (1986), 150 Ill. App. 3d 56, 60, 501 N.E.2d 882, 885.) The more obvious the injury, the easier it is for the injured person to discover the injury and that it was wrongfully caused. (*Saunders*, 150 Ill. App. 3d at 60, 501 N.E.2d at 885 (trial court erred when it determined, as a matter of law, that the date of the amputation of plaintiff's hand was the discovery date because plaintiff, who had experienced numbness in his hand for several years, had no reason to suspect that the amputation was for anything other than nonnegligent organic causes).) If the injury is an aggravation of a physical problem which may naturally develop, absent negligent causes, a plaintiff is not expected to know immediately of its existence, or its potential wrongful cause. (*Saunders*, 150 Ill. App. 3d at 60, 501 N.E.2d at 885; *Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 486, 473 N.E.2d 1322, 1342; *Pszenny v. General Electric Co.* (1985), 132 Ill. App. 3d 964, 967, 478 N.E.2d 485, 488.) Thus, until such time as the plaintiff knows or should have known that his or her injury or condition, seemingly innocent in cause, is perhaps the result of another's negligent acts, the plaintiff has not had any opportunity to discover that a cause of action exists. *Saunders*, 150 Ill. App. 3d at 60, 501 N.E.2d at 885.

■ The parties here rely almost exclusively upon the plaintiff's deposition testimony and the "notes" that she took recording her progress during the relevant time periods, which were attached as an exhibit to her deposition. These facts, although undisputed, do not conclusively support the trial court's finding that as a matter of law the plaintiff knew or reasonably should have known of her alleged injury and that it was wrongfully caused prior to October 5, 1982.

Specifically, the facts here show that plaintiff's initial accident and injury occurred in January 1982, and she began seeing various doctors almost immediately after that date. Plaintiff's medical malpractice claim is based upon the defendants' alleged aggravation of her initial injury in January 1982, and the record shows that from the time she initially began seeing the defendant doctors, her condition became continually worse. Nevertheless, she continued to work regular hours

until July 1982, when her condition had become so bad that she could not continue to work. Each of the various treatments prescribed by the defendant doctors did not improve her condition but in fact made the condition worse than it had been before.

Although plaintiff had been seeing various doctors continuously from January 1982, until October 5, 1982, she switched from one doctor to another because none of them were able to find anything wrong with her, and so she was referred to other doctors in an attempt to discover the true nature of her problem, which continued to get worse. Also, even though she admitted she was suspicious because the doctors avoided answering her questions, and her condition did not get better, the doctors reassured her throughout this time that she was getting better, and further suggested that her problems were not entirely physical in nature, and that with rest, relaxation and effort on her part, she would fully recover. We do not believe that only one conclusion can be drawn from the facts presented here, for the record does not sufficiently show that the plaintiff knew or reasonably should have known of her injury and that it was wrongfully caused prior to October 5, 1982.

■ Moreover, we find that, in addition to the aforementioned factors, the various comments and criticisms about the defendant doctors made to plaintiff were also insufficient to prove, as a matter of law, that plaintiff knew or reasonably should have known of her injury and that it was wrongfully caused prior to October 5, 1982. These criticisms do not conclusively establish, as defendants claim, that prior to October 5, 1982, the plaintiff possessed sufficient information concerning her injury and its cause such that a reasonable person would be put on notice to inquire as to whether actionable conduct is involved. Although the record here shows that various criticisms of the defendant doctors were made to plaintiff prior to October 5, 1982, these statements were general in nature and broad in scope, and, more often than not, directed towards the personal reputations of the doctors, and, further, did not address the standard of care received by plaintiff. We find that none of these factors, either when viewed independently, or when viewed as a whole, are sufficient to establish, as a matter of law, that the plaintiff knew or reasonably should have known of her alleged injury, and that it was wrongfully caused, prior to October 5, 1982.

For all of the foregoing reasons, we also find that the trial court erred when it determined, as a matter of law, that plaintiff discovered her cause of action prior to October 5, 1982. Hence, we reverse the trial court's judgment in favor of Drs. Semerad, Shenker, and Frank,

and its dismissal of plaintiff's complaint in favor of Dr. Gleason, and remand the case to the trial court for further proceedings consistent with this opinion.

Judgment reversed and remanded with directions.

BUCKLEY and O'CONNOR, JJ., concur.