MARGARET YOUNG, as Special Adm'x For the Estate of Harold Young, Deceased, Plaintiff-Appellant, v. MARK McKIEGUE, Indiv. and as Agent of Russell Thornton, *et al.*, Defendants-Appellees (Olympia Fields Osteopathic Medical Center *et al.*, Defendants).

First District (3rd Division)  No. 1—98—0369

Opinion filed March 3, 1999.

Fishman & Fishman & Saltzberg, P.C., of Chicago (Michael P. Barone and Carol Collins, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (Chad M. Castro, Hugh C. Griffin, Diane I. Jennings, and Cara E. Zemenak, of counsel), for appellees.

JUSTICE CERDA delivered the opinion of the court:

The question presented by this appeal is whether we can determine, as a matter of law, the date when the two-year statute of limitations governing medical malpractice actions under section 13—212(a) of the Code of Civil Procedure (Code) (735 ILCS 5/13—212(a) (West 1996)), and applicable to plaintiff's claims under the Wrongful Death Act (740 ILCS 180/1 (West 1994)), began to run against defendants-appellees.

Plaintiff, Margaret Young, as special administratrix for the estate of her deceased husband, Harold Young (decedent), appeals the dismissal of counts I through III of her fifth and sixth amended complaints as brought against defendants Dr. Mark McKiegue, Midwest Physician Group (Midwest Physician), and Dr. Michael Settecase (collectively defendants). Counts I through III of the subject complaints assert claims for wrongful death under the Wrongful Death Act based on defendants' alleged negligent medical treatment and care of the decedent in August and September 1993. Upon motions filed by defendants under section 2—619(a)(5) of the Code (735 ILCS 5/2—619(a)(5) (West 1996)), the circuit court dismissed the claims as time-barred, and plaintiff appeals. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

The following facts are derived from the well-pleaded facts of plaintiff's amended complaints and the reasonable inferences drawn therefrom, which for purposes of this appeal must be accepted as true (*In re Chicago Flood Litigation*, 176 Ill. 2d 179, 184, 680 N.E.2d 265, 268 (1997)), as well as the various evidentiary materials filed by both parties in connection with defendants' motions. *In re Petition for Submittal of the Question of Annexation to the Corporate Authorities of the City of Joliet*, 282 Ill. App. 3d 684, 688, 668 N.E.2d 1073, 1076 (1996) (court may consider when ruling on section 2—619 motion the "pleadings, depositions, affidavits [citation] and other evidence offered by the parties").

On August 26, 1993, the decedent was transferred from St. Margaret of Mercy Hospital to Olympia Fields Osteopathic Medical Center (Olympia Fields), where he was admitted for treatment of pneumonia. The decedent received inpatient treatment at Olympia Fields from August 27, 1993, to September 3, 1993. The decedent was scheduled to return home on September 3, but was readmitted for further evaluation after he coughed up a quantity of blood at the hospital immediately before he was to be discharged.

The decedent was determined to be hypoxic and was provided

oxygen. Dr. McKiegue saw the decedent sometime before 7 p.m. on September 3 and noted that, although the decedent's condition had improved, he complained of a shortness of breath. The medical records show the decedent experienced pressurized pain in his chest and numbness in his left arm over the course of the evening. Plaintiff was at Olympia Fields on September 3, and she stated that the decedent's condition suddenly began to deteriorate after he coughed up the blood. She stated that, throughout the evening, the decedent complained of chest pain as well as coldness and heaviness in his arm, and appeared to be clammy, sweaty and in discomfort.

At about 8:50 p.m., Dr. McKiegue ordered an electrocardiogram (EKG) and a chest X ray, and arrangements were made to transfer the decedent to intensive care. Plaintiff noted one of the doctors treating the decedent, Dr. Robert Ching, appeared "panicky" before the decedent's transfer. Plaintiff further stated a nurse who was assisting Dr. Ching told her "she knew [the decedent] was dying." At about 1 a.m. on September 4, 1993, the decedent experienced respiratory failure and, following unsuccessful attempts at resuscitation, died a short time later.

Dr. Ching later informed plaintiff that her husband died as a result of complications from his pneumonia. Plaintiff immediately questioned Dr. Ching about the care received by the decedent and demanded an autopsy, explaining she "wanted to find out what [went] wrong" because she believed the decedent may have suffered from problems not disclosed to her by the physicians. Plaintiff stated that, ever since the events of September 3, she "thought that [the doctors] didn't do enough" and suspected inappropriate medical care may have contributed to the decedent's death. Plaintiff specifically expressed concern over the fact the decedent died only hours after being prepared to leave the hospital. According to plaintiff, "[p]eople don't just die of pneumonia after they are in the hospital ten days."

An autopsy of the decedent was performed on September 4, 1993. The final autopsy report states the decedent's death was immediately caused by "anoxia due to bronchopneumonia and pulmonary edema." The report further lists as contributory factors: "1. Pulmonary thromboembolism; 2. Myocardial infarction, recent (septum) old, with recent extension; 3. Coronary atherosclerosis; 4. Right hydrothorax; 5. Organized thrombus in abdominal aorta; 6. Extension of previous infarct." The death certificate prepared by Dr. McKiegue likewise indicates the immediate cause of death was "pulmonary edema" brought about by "pneumonia." No cardiac ailment is identified in the document.

At some point between September 4, 1993, and October 20, 1993,

plaintiff contacted her attorney for purposes of investigating the nature of the decedent's death and the care he received at Olympia Fields. Per her attorney's recommendation, plaintiff requested a copy of the medical records, including the autopsy report, on October 20, 1993. Plaintiff received the records sometime in December 1993 and forwarded them to her attorney about two weeks thereafter. Plaintiff also signed a retainer agreement with her attorney in December 1993 for purposes of pursuing the instant lawsuit.

Sometime after receiving the medical records in December 1993, plaintiff's attorney sent the information to two medical experts, Dr. David Bakken, an infectious-disease specialist, and Dr. John Markis, a cardiovascular specialist at Harvard University. The record does not reflect the particular dates on which plaintiff's attorney submitted the medical records for the experts' review. The evidence, however, suggests the medical records were sent first to Dr. Bakken sometime between December 1993 and August 1994, and then forwarded to Dr. Markis sometime between August 1994 and February 1995.

On or about August 17, 1994, plaintiff's attorney received a physician's report prepared by Dr. Bakken. Dr. Bakken concluded "the physicians caring for [the decedent] deviated from the standard of care by not recognizing that his increasing respiratory distress which occurred on September 3 was cardiac in nature." According to Dr. Bakken, the EKG performed upon the decedent's readmittance to the hospital "is consistent with an acute inferior wall myocardial infarction," which was "corroborated by the post mortem findings." Dr. Bakken opined the decedent's death "was due to the development of pulmonary edema secondary to myocardial infarction which was not recognized" by the medical staff on September 3, 1993, and concluded the decedent may have survived if his "acute cardiac event" had been properly treated. Dr. Bakken recommended the medical records be reviewed by a competent cardiologist to corroborate his findings and conclusions.

The record suggests that, per Dr. Bakken's recommendation, plaintiff's attorney forwarded the decedent's medical records to Dr. Markis. On or about February 16, 1995, plaintiff's attorney received a written report from Dr. Markis, which was in many aspects consistent with the findings and conclusions reached by Dr. Bakken. Like Dr. Bakken, Dr. Markis stated the decedent's death was a result of cardiac arrest brought about by acute myocardial ischemia that was not timely recognized and treated by the medical professionals attending to the decedent on September 3, 1993. Based on his findings, Dr. Markis concluded that the physicians and staff failed to meet the appropriate standard of care, and he opined that the decedent "would have had a

far better chance of survival had [the] deviations from the standard of care not been made."

Plaintiff stated that prior to February 1995 she understood and believed her husband had died of complications from pneumonia. Not until receipt of Dr. Markis' report does plaintiff claim she knew the decedent's death was possibly caused by a cardiac event misdiagnosed by the hospital's medical staff.

On March 3, 1995, plaintiff filed a complaint for wrongful death, together with a jury demand and a section 2—622 affidavit prepared by Dr. Markis (735 ILCS 5/2—622 (West 1994)), against Olympia Fields and several of the hospital's doctors based upon their alleged malpractice in failing to diagnose and properly treat the decedent's cardiac condition. Plaintiff later amended her original complaint to assert wrongful death claims against defendants. In a fourth amended complaint filed on July 24, 1996, plaintiff added Dr. McKiegue as a defendant, alleging she first became aware of Dr. McKiegue's involvement in the treatment of the decedent on June 19, 1996, when one of the original defendant doctors identified Dr. McKiegue as the attending physician for the decedent on September 3 and 4, 1993. Plaintiff filed a fifth amended complaint on November 6, 1996, adding Midwest Physician as the employer of certain defendant doctors, and, on February 13, 1997, amended her complaint a final time to include Dr. Settecase, as well as Dr. Ken Perez. In the latter amended complaint, plaintiff alleged she first discovered the involvement of Drs. Settecase and Perez in the decedent's medical care on February 5, 1997, when Dr. McKiegue stated in his deposition that they were the physicians on call on the evening of September 3, 1993, and the morning of September 4, 1993.

In consolidated motions, defendants, as well as Dr. Perez, moved to dismiss the claims against them pursuant to section 2—619(a)(5) on the basis they were barred by the two-year statute of limitations applicable to medical malpractice actions under section 13—212(a) of the Code (735 5/13—212(a) (West 1996)). Based on the evidentiary materials submitted by the parties, the circuit court agreed, finding the two-year limitations period commenced in December 1993 and ran to December 1995, and dismissed plaintiff's claims as they pertained to the moving parties on September 8, 1997. Upon defendants' motion brought pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), the circuit court determined that no just reason existed for delaying plaintiff's appeal to this court. Dr. Perez did not join in defendant's request for a Rule 304(a) finding and, accordingly, is not a party to this appeal.

## II. ANALYSIS

■ The purpose of involuntary dismissal under section 2—619 of the Code is to afford litigants a means to dispose of issues of law and easily proved issues of fact at the outset of the case, reserving disputed factual questions for the jury. *Zedella v. Gibson*, 165 Ill. 2d 181, 185, 650 N.E.2d 1000, 1002 (1995); *Goran v. Glieberman*, 276 Ill. App. 3d 590, 592, 659 N.E.2d 56, 58 (1995). Section 2—619(a)(5), pursuant to which defendant's motion was brought, specifically allows dismissal when "the action was not commenced within the time limited by law." 735 ILCS 5/2—619(a)(5) (West 1996). In ruling on a section 2—619 motion, all pleadings and supporting documents must be construed in a light most favorable to the nonmoving party, and the motion should be granted only where no material facts are in dispute and the defendant is entitled to dismissal as a matter of law. *Mayfield v. ACME Barrel Co.*, 258 Ill. App. 3d 32, 34, 629 N.E.2d 690, 693 (1994). The relevant inquiry on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732, 735 (1993). Appellate review of a dismissal pursuant to section 2—619 is *de novo* and, thus, a reviewing court need not afford deference to the circuit court's reasoning. *Spillyards v. Abboud*, 278 Ill. App. 3d 663, 668, 662 N.E.2d 1358, 1361-62 (1996).

■ Section 2 of the Wrongful Death Act directs that an action for wrongful death be instituted within two years after the date of death of the person on whose behalf the action is brought. In this case, the Wrongful Death Act statute of limitations began to run on September 4, 1993. 740 ILCS 180/2 (West 1994). However, the limitations period set forth in section 2 is inapplicable in cases where the wrongful death claim is predicated upon a claim of medical malpractice that was not apparent to the plaintiff at the time of death. In such cases, the time for filing a wrongful death claim will be governed by the statute of limitations applicable to medical malpractice actions under section 13—212(a) of the Code. See *Wells v. Travis*, 284 Ill. App. 3d 282, 286-87, 672 N.E.2d 789, 791-92 (1996); *Neade v. Engel*, 277 Ill. App. 3d 1004, 1008, 662 N.E.2d 118, 120-21 (1996); *Cramsey v. Knoblock*, 191 Ill. App. 3d 756, 762, 547 N.E.2d 1358, 1363 (1989); *Hale v. Murphy*, 157 Ill. App. 3d 531, 533, 510 N.E.2d 488, 490 (1987); *Arndt v. Resurrection Hospital*, 163 Ill. App. 3d 209, 213, 517 N.E.2d 1, 3 (1987); *Coleman v. Hinsdale Emergency Medical Corp.*, 108 Ill. App. 3d 525, 529, 439 N.E.2d 20, 24 (1982); *Fure v. Sherman Hospital*, 64 Ill. App. 3d 259, 272, 380 N.E.2d 1376, 1385 (1978); see also *Durham v. Michael Reese Hospital Foundation*, 254 Ill. App. 3d 492, 495, 627 N.E.2d

67, 69 (1993) ("all actions for injury or death predicated upon the alleged negligence of a physician [or hospital] are governed by section 13—212(a)").

■ Under section 13—212(a), any claim of malpractice asserted against a physician or hospital must be filed within two years of "the date on which the claimant knew, or through the use of reasonable diligence should have known, *** of the existence of the injury or death for which damages are sought." 735 ILCS 5/13—212(a) (West 1996). Section 13—212(a) has been read within the context of the "discovery rule" to mean that the two-year malpractice limitations period begins to run when the party "knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Witherell v. Weimer*, 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874 (1981); *Weidman v. Wilkie*, 277 Ill. App. 3d 448, 453, 660 N.E.2d 157, 160 (1995). Once the party knows or reasonably should have known both that an injury occurred and that it was wrongfully caused, the party is obligated to inquire further as to the existence of a cause of action. *Witherell*, 85 Ill. 2d at 156, 421 N.E.2d at 874.

The effect of applying the discovery rule in wrongful death cases based upon medical malpractice is to toll the limitations period until the plaintiff knows or should have known of the wrongful cause of the death for which relief is being sought. Thus, knowledge of the death does not commence the statute of malpractice limitations. Rather, the malpractice limitations period begins to run when the plaintiff knows or should have known not only of the death, but also that the death was wrongfully caused. *Hale*, 157 Ill. App. 3d at 534-35, 510 N.E.2d at 491; *Coleman*, 108 Ill. App. 3d at 531, 439 N.E.2d at 26-27; *Fure*, 64 Ill. App. 3d at 270, 380 N.E.2d at 1385.

■ The issue of when a party knew or should have known both of the injury and that it was wrongfully caused is generally one of fact. *Witherell*, 85 Ill. 2d at 156, 421 N.E.2d at 874; *Gara v. Semerad*, 183 Ill. App. 3d 622, 628, 539 N.E.2d 298, 302 (1989). Thus, in most cases, the time at which a party knows or reasonably should have known both of her injury and that it was wrongfully caused will be a disputed question for the trier of fact. Only where the facts are not in dispute, and only one conclusion can be drawn from those facts, may the question be determined by the court as a matter of law. *Witherell*, 85 Ill. 2d at 156, 421 N.E.2d at 874; *Gara*, 183 Ill. App. 3d at 628-29, 539 N.E.2d at 302.

Clearly, the uncontroverted evidence demonstrates plaintiff knew of her injury on September 4, 1993, the date of her husband's death. We note the relevant "injury" for purposes of determining the discovery date in this case is the death of the decedent and not, as

plaintiff contends, the alleged injury personally suffered by the decedent. See *Wells*, 284 Ill. App. 3d at 287, 672 N.E.2d at 793; *Cramsey*, 191 Ill. App. 3d at 762, 547 N.E.2d at 1362-63; *Hale*, 157 Ill. App. 3d at 534-35, 510 N.E.2d at 491; *Coleman*, 108 Ill. App. 3d at 530-31, 439 N.E.2d at 25; see also *Wyness v. Armstrong World Industries, Inc.*, 131 Ill. 2d 403, 414-15, 546 N.E.2d 568, 573 (1989) (wrongful death action "addresses the injury suffered by the next of kin due to the loss of the deceased rather than the injuries personally suffered by the deceased prior to death" and, thus, "[t]he precipitating 'injury' for the plaintiffs in a wrongful death action *** is the death"). Accordingly, in determining the timeliness of plaintiff's claims against defendants, we need determine only whether plaintiff had either actual or constructive knowledge as of a certain date that her husband's death was wrongfully caused.

■ The phrase "wrongfully caused" does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action. *Knox College v. Cleotex Corp*, 88 Ill. 2d 407, 416, 430 N.E.2d 976, 980 (1981); *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 170-71, 421 N.E.2d 864, 868 (1981); *Saunders v. Klungboonkrong*, 150 Ill. App. 3d 56, 59, 501 N.E.2d 882, 885 (1986). Rather, the term refers to that point in time when "the injured party becomes possessed of sufficient information concerning his [or her] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Knox College*, 88 Ill. 2d at 416, 430 N.E.2d at 980-81; see also *Wells*, 284 Ill. App. 3d at 286, 672 N.E.2d at 793.

Plaintiff contends that she did not possess sufficient information regarding the death of her husband and its cause until she received Dr. Markis' report expressing his opinion that the decedent's death was due to a cardiac condition that went untreated by his physicians. Thus, plaintiff asserts a discovery date of February 16, 1995, and maintains that, since defendants were included in the underlying lawsuit before the expiration of the two-year limitations period on February 16, 1997, her amended complaints were timely filed.

Defendants, on the other hand, maintain plaintiff knew or should have known the decedent's death was wrongfully caused in December 1993 when, after entertaining suspicions concerning the care provided the decedent, she received the hospital's medical records and retained a lawyer for purposes of investigating a lawsuit on her behalf. Accordingly, defendants contend the two-year statute of limitations commenced in December 1993 and ran December 1995 and, as such, plaintiff's amended complaints adding them as parties on July 24, 1996, November 6, 1996, and February 13, 1997, were time-barred and properly dismissed by the circuit court.

In the alternative, defendants argue plaintiff knew or should have known her husband's death may have resulted from malpractice in August 1994 when her lawyer received the medical findings and conclusions of Dr. Bakken, and they therefore contend the amended complaints naming Midwest Physician and Dr. Settecase were untimely because they were filed November 6, 1996, and February 13, 1997.

■ We agree with defendants that plaintiff knew or reasonably should have known no later than August 17, 1994, when her attorney received Dr. Bakken's medical report, that her husband's death was wrongfully caused. Despite plaintiff's claim that she did not know of the injury's wrongful causation until she received Dr. Markis' report on or about February 16, 1995, Dr. Bakken's findings and conclusions were sufficient to place her on notice that the decedent's death was likely caused by negligent medical care. Dr. Bakken's report clearly stated that the physicians caring for the decedent deviated from the standard of care by not recognizing that his respiratory distress was cardiac in nature. The report stated that the EKG was consistent with an inferior wall myocardial infarction. The report also stated that, had the decedent been appropriately treated for his acute cardiac event, the outcome may well have been different from what occurred. Receipt of Dr. Bakken's report in August of 1994 obligated plaintiff to investigate further to determine whether actionable conduct was involved and, within two years of that time, file a cause of action, if viable, against any and all potentially liable parties. See *Nolan*, 85 Ill. 2d at 170-71, 421 N.E.2d at 868; *Wells*, 284 Ill. App. 3d at 287, 672 N.E.2d at 793; *McCormick v. Uppuluri*, 250 Ill. App. 3d 386, 390-91, 621 N.E.2d 57, 60-61 (1993).

As a matter of law, the two-year statute of limitations commenced to run no later than August 17, 1994, when the first expert report was received. Because plaintiff's claims against Midwest Physician and Dr. Settecase were not filed within two years of that date, they are time-barred under the Code.

Plaintiff's claim against Dr. McKiegue was filed on July 24, 1996, within two years of August 17, 1994, and thus will be time-barred only if we can determine as a matter of law that plaintiff knew or should have known of the wrongful nature of her husband's death prior to August 17, 1994.

■ After review of the record, we find an issue of fact exists as to whether plaintiff possessed the requisite knowledge before August 1994. Dr. McKiegue asserts plaintiff's suspicions of malpractice were *per se* sufficient to charge her with both actual and constructive knowledge that her husband's death was wrongfully caused. However, when

a party knows or reasonably should know that her injury was wrongfully caused does not mean when a party is suspicious that her injury was wrongfully caused. *LaManna v. G.D. Searle & Co.*, 204 Ill. App. 3d 211, 218, 561 N.E.2d 1170, 1175 (1990). Thus, the statute of limitations is not triggered during that period in which the party is attempting to discover whether her injury is wrongfully caused. *LaManna*, 204 Ill. App. 3d at 218, 561 N.E.2d at 1175. Instead, the limitations period commences when the party possesses enough information concerning her injury to apprise a reasonable person to the need for further inquiry to determine whether a legal wrong has been committed. *LaManna*, 204 Ill. App. 3d at 218, 561 N.E.2d at 1175.

More fundamentally, suspecting wrongdoing clearly is not the same as knowing that a wrong was probably committed. Furthermore, whether a party possessed the requisite constructive knowledge contemplates an objective analysis of the factual circumstances involved in the case. Thus, the relevant determination rests on what a reasonable person should have known under the circumstances and not on what the particular party specifically suspected. The trier of fact must examine the factual circumstances upon which the suspicions are predicated and determine if they would lead a reasonable person to believe that wrongful conduct was involved. The fact that a party suspects wrongful conduct, without examining the reasons underlying those suspicions, is not enough to constitute constructive knowledge that an injury was wrongfully caused. See *LaManna*, 204 Ill. App. 3d at 219, 561 N.E.2d at 1175.

What plaintiff knew or reasonably should have known after viewing the medical records available and the factual circumstances presented, and whether based on that information plaintiff knew or reasonably should have known that her husband's death may have resulted from negligent medical care, are questions best reserved for the trier of fact.

## III. CONCLUSION

For the foregoing reasons, the order of the circuit court dismissing plaintiff's claims against Midwest Physician and Dr. Settecase is affirmed. Because a disputed question of fact remains about when the applicable statute of limitations began to run against Dr. McKiegue, the court's dismissal of plaintiff's claim against Dr. McKiegue is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

CAHILL, P.J., and BURKE, J., concur.