In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1718

The Whitlock Corporation, formerly known
as Apex Automotive Warehouse, L.P.,

Plaintiff-Appellant,

v.

Deloitte & Touche, L.L.P.,

Defendant-Appellee.

Appeal from the United States District Court for
the
Northern District of Illinois, Eastern Division.
No. 99 C 2537--Rebecca R. Pallmeyer, Judge.

Argued October 27, 2000--Decided December 7,
2000

   Before Easterbrook, Kanne, and Rovner,
Circuit Judges.

   Easterbrook, Circuit Judge.  In January
1995 Apex Automotive Warehouse, a
wholesaler of auto parts, purchased from
WSR Corporation the stock of Whitlock
Corporation, a retailer of auto parts. As
is common in transactions of this kind,
the closing price was calculated on the
basis of pro forma financial statements
that the seller had prepared, and whose
accuracy the seller warranted. See LHLC
Corp. v. Cluett, Peabody & Co., 842 F.2d
928 (7th Cir. 1988). These hastily
prepared statements were to be followed
up by a more complete estimate of the
assets' value, to be performed by wsr's
auditor Deloitte & Touche, with
adjustments to the price made
accordingly.

   Within months Apex encountered financial
distress as a result of the transaction,
or at least with the price paid for the
retail stores and their inventory, and in
1996 it entered bankruptcy, where it
reorganized jointly with Whitlock and was
merged into a single firm. (The surviving

entity has the Whitlock name, but we use Apex in this opinion to avoid confusion.) wsr and Deloitte never tendered a post-closing report to facilitate a price adjustment. The adversary proceeding now before us represents an effort to recover from Deloitte, for the benefit of Apex's creditors, on the theory that Deloitte committed fraud by failing to alert Apex that the Whitlock stock had been overvalued. Apex has disavowed any claim under the federal securities laws, which include not only a one-year statute of limitations but also a three-year statute of repose, Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991); Short v. Belleville Shoe Manufacturing Co., 908 F.2d 1385 (7th Cir. 1990), and rests its hopes on the law of Illinois, which the parties agree supplies the rule of decision. For claims under Illinois law against accountants the statute of limitations is two years, 735 ILCS 5/13-214.2(a), commencing when the plaintiff "knew or reasonably should have known" not only of its injury but also that the injury may have had a wrongful cause. See Knox College v. Celotex Corp., 88 Ill. 2d 407, 415, 430 N.E.2d 976, 980 (1981). Apex added Deloitte to the adversary proceeding in May 1998, so if its claim accrued before May 1996 it has expired. Both the bankruptcy court, 1999 Bankr. Lexis 209 (Bankr. N.D. Ill. Mar. 9, 1999), and the district court, 2000 U.S. Dist. Lexis 2045 (N.D. Ill. Feb. 17, 2000), concluded that the statute of limitations has run and dismissed Deloitte as a defendant. A partial final judgment under Fed. R. Bankr. P. 7054 and Fed. R. Civ. P. 54(b) enables us to resolve Apex's appeal while its suit against wsr continues in the bankruptcy court.

Bankruptcy Judge Katz relied on three principal considerations when granting summary judgment to Deloitte. First, one of Apex's accountants sent its general partner a memorandum in April 1995 stating that "what they did to us was to intentionally mislead you as to how they would value the inventory." That memorandum showed strong suspicion, if not actual knowledge, of both injury and a wrongful cause, starting the period of limitations, the bankruptcy judge concluded. Second, Apex filed suit in October 1995 accusing both wsr and Deloitte of miscalculating the value of

certain items that entered into the price Apex paid for the Whitlock stock. Again that suit (soon dismissed because Deloitte's presence as a defendant spoiled diversity of citizenship) revealed suspicion, if not actual knowledge. Third, on October 6, 1995, the president of Apex's general partner sent Deloitte a letter stating, among other things:

Apex's lawyers are continuing their investigation into whether wsr and/or Deloitte face liability for damages arising from (1) an adverse material change in the condition of the business; (2) breaches of representations and warranties with respect to wsr's financial statements; (3) other omissions, errors and irregularities in wsr's books, records and audited financial statements; and (4) other breaches of the Stock Purchase agreement.

This letter, the bankruptcy court concluded, showed that by October 1995 (10 months after the closing) Apex was on inquiry concerning both injury and causation; and because the Illinois statute of limitations starts to run when a reasonable person would have commenced an inquiry, the time for suit expired no later than October 1997. The district court agreed with these conclusions.

   Apex's appeal is founded on two legal misconceptions. The first is that in bankruptcy (and diversity) cases federal courts follow state rules about the allocation of issues between judge and jury. They do not; federal rules always control in federal court. Mayer v. Gary Partners & Co., 29 F.3d 330 (7th Cir. 1994). Apex believes that Illinois favors jury decision of disputes about the commencement of the period of limitations. That may be so, but in federal court Fed. R. Civ. P. 56 provides that only a material dispute about an issue of fact requires trial; there is no preference for trial on a dispute that can be resolved by a judge using (materially) undisputed facts. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1396 (7th Cir. 1997).

   The second misconception is that the period of limitations starts defendant-by-defendant, rather than injury-by-

injury. The period of limitations began to run against wsr no later than April 1995, when (as the accountant's letter of that month shows) Apex already believed that chicanery had occurred in the valuation of Whitlock's inventory. By then Apex not only knew of its injury (about which it learned promptly after the closing in January 1995) but also strongly suspected that its injury had a wrongful cause. But, Apex insists, the April 1995 letter is ambiguous: the word "they" in the statement "what they did to us was to intentionally mislead you" could refer only to actors at wsr. It was in the dark for longer, Apex submits, about Deloitte's role. Maybe so, but if Apex's claim accrued in April 1995, then time started running with respect to all potentially responsible persons. See LeBlang Motors, Ltd. v. Subaru of America, Inc., 148 F.3d 680, 690-92 (7th Cir. 1998) (Illinois law); City National Bank of Florida v. Checkers, Simon & Rosner, 32 F.3d 277, 283-84 (7th Cir. 1994) (Illinois law); Central States Pension Fund v. Navco, 3 F.3d 167, 171 (7th Cir. 1993) (federal common law); Young v. McKiegue, 303 Ill. App. 3d 380, 388, 708 N.E.2d 493, 500 (1st Dist. 1999). Apex could have used the ensuing years to determine who was to blame, and of course it did not have to search hard to find Deloitte. Apex has not cited any decision by an Illinois court standing for the proposition that the statute of limitations for a single injury starts to run at different times against different potentially responsible persons. It does cite decisions by two federal district courts. See Antell v. Arthur Anderson LLP, 1998 U.S. Dist. Lexis 7183 (N.D. Ill. April 30, 1998); Ventre v. Datronic Rental Corp., 1996 U.S. Dist. Lexis 17501 (N.D. Ill. Nov. 18, 1996). But Antell, which was rendered before LeBlang and Young (and failed to discuss either City National Bank or Navco), cannot be deemed authoritative, and Ventre held only that the commencement of the limitations period with respect to one injury does not start the time with respect to a different injury caused by a different person through a different fraudulent means. Apex's claim concerns a single injury, the allegedly inflated price it paid for wsr's stock in Whitlock.

True enough, tolling rules may extend the time by different amounts with

respect to different parties that have behaved differently, and Apex argues that Deloitte fraudulently concealed its role. See generally Cada v. Baxter Healthcare Corp., 920 F.2d 446 (7th Cir. 1990) (discussing the scope of both equitable tolling and equitable estoppel). Still, the claim against Deloitte accrued, and the clock began to tick, no later than April 1995. It has continued ticking, too, because Apex has adduced no evidence of "concealment," fraudulent or otherwise, by Deloitte. Simple denials of liability do not toll the period of limitations or estop the adverse party to rely on it. Singletary v. Continental Illinois National Bank, 9 F.3d 1236 (7th Cir. 1993). Apex does not contend that Deloitte spoliated evidence or lied in response to inquiries; rather its fraudulent-concealment theory is that Deloitte owed it a fiduciary duty, so that tolling continued until Deloitte came forward with the truth. On this view, the time to sue could be postponed until after the litigation was over, if Deloitte continued to deny culpability. That is not the function of the fraudulent-concealment principle; even a fiduciary is entitled to the benefit of the statute of limitations without a need to confess to wrongdoing. Although Illinois sometimes allows a fiduciary's silence to toll a period of limitations, see Chicago Park District v. Kenroy, Inc., 78 Ill. 2d 555, 562, 402 N.E.2d 181, 185 (1980), that possibility does Apex no good, for Deloitte was not its fiduciary. Apex did not hire Deloitte to look out for its interests in the transaction; Deloitte was wsr's auditor, and Apex dealt with wsr at arms' length. As part of the sale wsr and Apex jointly engaged Deloitte to perform certain auditing functions, but Deloitte could not sensibly have served as a fiduciary to both buyer and seller in the transaction, obliged to favor Apex's position over wsr's--and to favor wsr's position over Apex's at the same time.

Deloitte may well have had contractual duties to both principals in the transaction, but adding the word "fiduciary" does not help us understand the nature of these duties or the period within which to initiate litigation about them. Deloitte served as an informational intermediary to a firm that was itself an expert in the auto parts business, so its

silence about details that affected the calculation of the purchase price did not amount to fraudulent concealment. Apex hired a separate accountant to check on Deloitte's work, a step that makes it even harder to see why Deloitte's silence should postpone litigation. Moreover, Apex concedes that Deloitte was not its fiduciary at the time the first set of financial statements (before closing) was prepared, and it is these financials that Apex contends were fraudulent. Apex could not count on any duties Deloitte may have assumed with respect to later transactions or statements to induce a duty of candor with respect to documents prepared earlier. See Lagen v. Balcor Co., 274 Ill. App. 3d 11, 20, 653 N.E.2d 968, 975 (2d Dist. 1995).

Nor did Deloitte's occasional soothing assurances to Apex create an equitable estoppel that keeps the suit alive. As the bankruptcy court observed, none of the supposedly lulling statements on which Apex now relies occurred after October 1995; by then Apex and Deloitte had adversarial relations. Unless equitable estoppel postponed the time past May 1996, however, the suit is untimely. Like the bankruptcy and district courts, therefore, we find it unnecessary to decide whether some time could be excluded by equitable tolling. No view of the record would entitle Apex to the exclusion of enough time to make a difference.

Affirmed