THERESE NEADE, as Independent Adm'r of the Estate of Anthony Robert Neade, Deceased, Plaintiff-Appellant, v. THOMAS ENGEL, Defendant-Appellee.

Second District No. 2—95—0625

Opinion filed February 21, 1996.—Rehearing denied March 26, 1996.

Robert J. Hauser, of Sullivan, Smith, Hauser & Noonan, Ltd., of Waukegan, for appellant.

Steven L. Larson and Linda E. Spring, both of Wildman, Harrold, Allen & Dixon, of Waukegan, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Plaintiff, Therese Neade, as administrator of the estate of Anthony Robert Neade, appeals the dismissal of her medical malpractice complaint against defendant, Dr. Thomas Engel. The trial court dismissed the complaint pursuant to section 2—619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(5) (West 1994)) because it was filed more than two years after the decedent's death. Plaintiff raises three issues for review: (1) whether plaintiff was not on notice, at the time of decedent's death, of defendant's negligence, so that the complaint was timely filed; (2) whether plaintiff raised an issue of fact concerning fraudulent concealment; and (3) whether defendant was equitably estopped to assert the statute of limitations.

Plaintiff filed suit August 10, 1994. She alleged the following facts in her amended complaint. On August 10, 1990, decedent was admitted to Condell Memorial Hospital (Condell) complaining of chest pain and showing other classic symptoms of coronary deficiency. Defendant, a cardiologist at Condell, assumed responsibility for decedent's care. Defendant ordered a thallium stress test to be administered to decedent. During the test, on August 13, 1990, decedent exhibited or complained of chest pain, which is an abnormal symptom and requires further testing. However, defendant misstated and concealed that decedent exhibited that symptom. Defendant also failed to interpret and read properly the EKG administered during the thallium stress test, finding that the EKG was normal. Defendant advised decedent's primary physician, Dr. Steven Portes, that decedent's condition was not cardiac related. As a result of the misstatement, concealment, and misdiagnosis, an angiogram was not ordered. An angiogram would have shown an occlusion of the coronary artery.

The complaint further alleged that, following decedent's discharge from Condell, he continued to rely on defendant's representations that his symptoms were not cardiac related. In June 1991, after decedent experienced chest pain because of physical exertion, he returned to Dr. Portes. Dr. Portes requested his associate, Dr.

Schlager, to examine decedent, provide treatment, and render a second opinion. Dr. Portes advised Dr. Schlager of the normal result of the thallium stress test. However, Dr. Schlager recommended an angiogram, which required hospitalization. Dr. Schlager was aware that a negative EKG and a normal thallium stress test could not rule out a life-threatening coronary occlusion. Dr. Portes refused to allow the angiogram.

On September 16, 1991, decedent suffered a massive myocardial infarction caused by a coronary artery occlusion. He was hospitalized at the Mayo Clinic in Jacksonville, Florida, until his death on September 25, 1991. Plaintiff was advised by decedent's physicians there that they would have ordered and allowed an angiogram. Plaintiff retained counsel to investigate Dr. Portes' possible negligence in disallowing the angiogram in June 1991. Counsel retained Dr. Norman, an internist, to review decedent's medical records. In formulating his preliminary opinions, Dr. Norman relied on defendant's final report, which asserted that decedent had no chest pain, arrhythmias, or ST abnormalities and that the thallium stress test was negative for coronary artery ischemia. It is accepted medical practice to rely on such a report without reviewing the base data. Dr. Norman determined that Dr. Portes deviated from the standard of care in his treatment of decedent by failing to order or allow further tests of decedent when he continued to exhibit cardiac symptoms, even though the thallium stress test and EKG were negative.

Following the filing of suit against Dr. Portes, discovery was conducted, including defendant's discovery deposition. Defendant was subpoenaed to appear for a deposition on July 13, 1993, but he refused to appear until after the statute of limitations had run. Defendant appeared for his deposition on September 28, 1993, three days after the two-year anniversary of decedent's death. During the discovery deposition, defendant stated that the EKG administered to decedent at Condell was negative, the thallium stress test was normal, decedent did not have chest pain during the test, the indications of chest pain set forth in handwritten notes were inaccurate, and the notes' author, "D. Curtis," was neither a nurse nor a doctor. Defendant's refusal to appear pursuant to a subpoena, his inaccurate final report and his sworn statements about a negative EKG, a normal stress test with no chest pains, and inaccurate hospital notes prepared by an incompetent person allegedly were calculated to prevent the discovery of a claim against defendant.

Dr. Norman reviewed the complete medical records in preparing for his discovery deposition on June 9, 1994. For the first time he examined the EKG tracings of decedent during the thallium stress

test. Dr. Norman determined that the tracings were equivocal, not normal. Dr. Buckingham, another expert, confirmed Dr. Norman's opinion that the August 1990 EKG was not negative but was equivocal. Dr. Talano, a cardiologist retained by Dr. Portes, was scheduled for a deposition on July 19, 1994. Because Doctors Norman and Buckingham were internists, not cardiologists, plaintiff's counsel did not file suit against defendant until Dr. Talano confirmed that the EKG tracings were equivocal.

Subsequently, "D. Curtis" was identified as Diane Curtis. She testified at her discovery deposition that she was a registered nurse and had worked at Condell for 11 years. For two of those years, including the relevant period, she was assigned to the cardiac rehabilitation unit where she had regular contact with defendant. She was present and monitored decedent during the August 1990 thallium stress test and authored the notes contemporaneously with the test. In the notes, she indicated that decedent complained of chest pain for the last three minutes of the test. Defendant normally would have been there at the time of decedent's complaint, and Curtis reported decedent's complaint of chest pains to defendant.

Defendant moved to dismiss, arguing that plaintiff should have known by September 25, 1991, that decedent's injury was wrongfully caused and she was thereby put on notice to investigate the care and treatment he received from defendant. Therefore, the complaint, which was filed more than two years after that date, was barred by the statute of limitations. Plaintiff attached to her response to the motion the affidavit of her counsel in which he stated that defendant's attorneys informed him that defendant would not appear for a deposition until after the statute of limitations had run. Also included were the affidavits of Dr. William Buckingham and Dr. Robert Norman, which both stated that it is an accepted practice in medicine to rely on the computer-generated results and the radiologist's report for a thallium stress test without reviewing the actual tracings and radiological pictures taken during the test. Plaintiff argued that the complaint was timely pursuant to the discovery rule because she did not discover defendant's wrongful conduct until after the statute of limitations had run and the complaint was filed within two years of that date and within four years of the allegedly wrongful act. In the alternative, plaintiff asserted that defendant fraudulently concealed evidence which precluded plaintiff from filing her case against him. The trial court dismissed the complaint with prejudice, and plaintiff timely appealed.

■ A section 2—619 motion may be used to dispose of issues of law or easily proved issues of fact. *Meyers v. Rockford Systems, Inc.*,

254 Ill. App. 3d 56, 61 (1993). The motion may be granted when the claim asserted is barred by some affirmative matter defeating the claim. *Meyers*, 254 Ill. App. 3d at 61. The trial court should grant a section 2—619 motion if, after construing the documents in the light most favorable to the nonmovant, it finds no disputed issues of fact. *Draper v. Frontier Insurance Co.*, 265 Ill. App. 3d 739, 742 (1994). The court must take as true all well-pleaded facts alleged in the complaint (*Nikolic v. Seidenberg*, 242 Ill. App. 3d 96, 99 (1993)), but it may not weigh the evidence or decide controverted material issues of fact (*Draper*, 265 Ill. App. 3d at 742). Our review of the dismissal is *de novo*. *Toombs v. City of Champaign*, 245 Ill. App. 3d 580, 583 (1993).

■ The applicable statute of limitations for medical malpractice is within two years of "the date on which the claimant knew, or through the use of reasonable diligence should have known, *** of the existence of the injury or death for which damages are sought in the action, *** but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." 735 ILCS 5/13—212(a) (West 1994). Therefore, the statute begins to run when the plaintiff knows, or reasonably should know, both of the injury and that it was wrongfully caused. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415 (1981). The plaintiff has the burden to investigate further as to the existence of a cause of action. *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981). Whether the plaintiff had sufficient information to put a reasonable person on inquiry is generally a question of fact. *Knox College*, 88 Ill. 2d at 416. However, where it is clear from the undisputed facts that only one conclusion can be drawn, the question is then one of law. *Witherell*, 85 Ill. 2d at 156.

Defendant argues that the statute of limitations began to run when decedent died. Plaintiff asserts that she did not discover defendant's negligence until June 1994, when her expert discovered that the test result was not negative. Plaintiff reasons that, pursuant to the discovery rule, the complaint was therefore timely filed.

*Arndt v. Resurrection Hospital*, 163 Ill. App. 3d 209 (1987), on which plaintiff relies, is most instructive. In January 1983, the decedent died. The plaintiff filed suit against the hospital in December 1984 and named the defendant doctor as a respondent in discovery. In September 1985, the plaintiff filed an amended complaint that added the defendant doctor as a party defendant. The amended complaint alleged that the plaintiff did not learn of the defendant's negligence until his discovery deposition was taken in May 1985. The defendant moved to dismiss the complaint as time barred. The appel-

late court determined that the statute of limitations began to run when the "plaintiff discovered *the fact of the defendant's negligence* which contributed to the death of her husband, and not on the date she discovered *the fact of the death* of her husband." (Emphasis in original.) *Arndt*, 163 Ill. App. 3d at 213. The court concluded that the amended complaint was therefore timely filed.

▮ Like the plaintiff in *Arndt*, plaintiff here did not learn of defendant's negligence until after his discovery deposition. That the defendant in *Arndt* was made a respondent in discovery and defendant here was not is immaterial. The court in *Arndt* determined that the naming of the defendant as a respondent in discovery did not shorten the limitations period. *Arndt*, 163 Ill. App. 3d at 214-15. Consequently, the failure to name defendant as a respondent in discovery could not shorten the limitations period.

Here, at the time of decedent's death, plaintiff was on notice of Dr. Portes' negligence. She retained an attorney, who hired an expert medical witness to investigate decedent's treatment. She timely filed a complaint against Dr. Portes. According to the experts' affidavits, it is generally accepted medical practice to rely on the test results. Because the expert opined that an angiogram should have been performed even in the presence of a negative stress test, it appeared to plaintiff that Dr. Portes' negligence was responsible for decedent's death. It would have been unreasonable to require plaintiff to investigate the accuracy of the test results because the medical profession relies on the accuracy of such tests. Defendant presented no affidavit to counter plaintiff's experts' affidavits that it is common medical practice to rely on such test results. We conclude that there is no question of fact that plaintiff was unaware of defendant's negligence until after his deposition. Plaintiff could not have filed suit against defendant until she was certain that there was "a reasonable and meritorious cause for filing" an action. 735 ILCS 5/2—622(a)(1) (West 1994). Plaintiff exercised reasonable diligence in pursuing the matter. Thus, the complaint was timely filed.

Because we are reversing the dismissal of the amended complaint on this basis, we need not address plaintiff's remaining contentions.

The judgment of the circuit court is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

McLAREN, P.J., and INGLIS, J., concur.