FIRST DIVISION
June 23, 2008

No. 1-06-2448

| | | |
|---|---|---|
| JOSETTA NAIR and SEGRAN NAIR, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| ALLEN BLOOM, M.D., MELVIN BOULE, M.D., | ) | |
| and RUSH-COPLEY MEMORIAL HOSPITAL and | ) | |
| THE RUSH SYSTEM FOR HEALTH, | ) | Honorable |
| | ) | Donald J. Suriano, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE WOLFSON delivered the opinion of the court:

The outcome of this case turns on when plaintiffs knew or should have known their injury was wrongfully caused.

Plaintiffs Josetta Nair and Segran Nair filed a complaint for medical malpractice and loss of consortium against defendants Allen Bloom, M.D., Melvin Boule, M.D., and Rush-Copley Memorial Hospital (Rush-Copley) and The Rush System for Health (Rush). The trial court entered summary judgment for defendants, concluding the complaint was filed after the two-year statute of limitations had run. We affirm.

FACTS

According to plaintiffs' Second Amended Complaint, on September 2, 1998, Josetta Nair went to the Rush-Copley emergency room complaining of abdominal pain. Dr. Alan Bloom examined her

and performed a surgical consultation.  Dr. Melvin Boule, a radiologist, read her CT scan and ultrasound as normal.  Josetta was discharged from the hospital.  Josetta returned to the emergency room the next day with complaints of abdominal pain.  She was given a shot for pain management and sent home.  On September 4, 1998, she arrived at Rush-Copley with complaints of severe abdominal pain and vomiting.  She was admitted to the hospital.

On September 5, 1998, Dr. Bloom performed exploratory surgery and removed an "adhesive band" of tissue blocking the bowel.  He diagnosed Josetta with a small bowel obstruction.  She remained in the hospital for the next ten days.

On September 15, 1998, Dr. Bloom performed a second surgery.  Following the second surgery, Josetta was transferred to Rush-Presbyterian Hospital under the care of Dr. Alexander Doolas.  On September 16, 1998, Dr. Doolas performed a third surgery on Josetta.  Several days after surgery, Josetta attempted to walk and discovered her legs would not support her weight.  She was told by her physicians this was a common side effect of her abdominal surgeries.

In late September 1998, she was transferred to a rehabilitation center where she remained a patient until December 1998.  She continued to receive therapy and improved from a

wheelchair, to a walker, to a cane.  Josetta says she questioned her doctors as to the cause of her continuing abdominal pain and leg weakness.  None of the doctors could answer her questions.

In March 1999, the plaintiffs spoke with Dr. Doolas.  Segran Nair told Dr. Doolas he was considering using "legal resources" to find out what was wrong with his wife's legs.  Dr. Doolas said he spoke on the telephone with Josetta, who asked him if he would be affected if the Nairs went to a lawyer.  Dr. Doolas noted Segran believed Dr. Bloom was responsible for the condition of Josetta's legs.  Dr. Doolas advised Josetta to get a neurologist's opinion.  He told her he did not believe Dr. Bloom caused the neuropathy.  In a letter to Dr. Bloom, dated March 18, 1999, Dr. Doolas said Josetta had "bilateral weakness of both her lower legs which is due to some neurologic defect that neurology has not defined yet."  He said he explained to the Nairs that "this was not related to her previous surgery."

In the Spring of 1999, the Nairs consulted with attorney Paul McMahon.  Segran Nair testified their purpose was to find out what was wrong with Josetta's legs.  The record contains a letter, dated November 22, 1999, from McMahon to Rush-Copley, indicating he represented Josetta Nair in a cause of action for injuries and requesting a set of complete medical records.  Also in the record is an authorization for the release of medical

3

records bearing Josetta Nair's signature.  Segran Nair testified McMahon told him they didn't have a case.

In the Spring of 2000, the Nairs consulted with another attorney, Kathleen Zelner.  They signed a retention agreement with Zelner.  Zelner sent the Nairs a letter and a reviewing physician's report three to six months afterward.  The Nairs had no further communication with Zelner.  The letter and report are not in the record.

In August 2001, Dr. Patricia Boatwright performed surgery on Josetta to remove ovarian cysts.  Dr. Boatwright's discharge summary indicated "the patient has a past medical history significant for multiple abdominal surgeries, secondary to a questionable mesenteric vein thrombosis following a surgery for lysis of adhesions," and "the patient had also sustained some nerve damage from her previous surgeries, which resulted in bilateral lower extremity paresthesias and neuropathies." Josetta says it was not until August 17, 2001, when she read Dr. Boatwright's discharge summary, that she first knew the injuries to her legs and abdominal area were wrongfully caused by the defendants.

On August 29, 2002, plaintiffs filed their complaint against the defendants.  On November 13, 2002, plaintiffs submitted two physician's reports concluding Dr. Bloom and Dr. Boule breached

4

1-06-2448

the prevailing standard of care.  On September 29, 2003, plaintiffs filed their second amended complaint.  Defendants filed motions for summary judgment contending the complaint was untimely filed.  The trial court entered summary judgment in favor of the defendants.

DECISION

Section 13-212 of the Code of Civil Procedure provides:

"(a) Except as provided in Section 13-215 of this Act, no action for damages for injury or death against any physician, dentist, registered nurse, or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the

5

1-06-2448

> act or omission or occurrence alleged in such
> action to have been the cause of such injury
> or death."  735 ILCS 5/13-212(a) (West 2004).

The statute of limitations begins to run "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." Knox College v. Celotex Corp., 88 Ill. 2d 407, 415, 430 N.E.2d 976 (1981). "At that point the burden is upon the injured person to inquire further as to the existence of a cause of action." Witherell v. Weimer, 85 Ill. 2d 146, 156, 421 N.E.2d 869 (1981). The term "wrongfully caused" is to be regarded as a general or generic term rather than a term of art. Knox College, 88 Ill. 2d at 416.  The plaintiff need not have knowledge of a specific defendant's negligent conduct or of the existence of a cause of action before triggering the statute. Knox College, 88 Ill. 2d at 415, citing Nolan v. Johns-Manville Asbestos, 85 Ill. 2d 161, 170-71, 421 N.E.2d 864 (1981).

> "At some point the injured person becomes
> possessed of sufficient information
> concerning his injury and its cause to put a
> reasonable person on inquiry to determine
> whether actionable conduct is involved.  At
> that point, under the discovery rule, the

6

> running of the limitations period commences."
>
> Knox College, 88 Ill. 2d at 416.

In many, if not most, cases the time when an injured party knows or reasonably should know of his injury and that it was wrongfully caused is an issue of fact. Witherell, 85 Ill. 2d at 156. But where it is apparent from the undisputed facts that only one conclusion can be drawn, the question becomes one for the court. Witherell, 85 Ill. 2d at 156.

Summary judgment is proper where, "when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." General Casualty Insurance Co. v. Lacey, 199 Ill. 2d 281, 284, 769 N.E.2d 18 (2002), citing 735 ILCS 5/2-1005(c) (West 2004). We review a grant of summary judgment de novo. General Casualty Insurance, 199 Ill. 2d at 284.

Defendants contend the limitations period began to run on the date of Josetta's second surgery, September 15, 1998, after which she experienced new symptoms of leg pain, weakness, and numbness in her legs. Plaintiffs contend they did not know of the defendants' alleged malpractice until August 2001, within two years of the filing of their complaint in August 2002. We do not

7

1-06-2448

agree with either contention.

In her deposition, Josetta Nair was asked the following questions and gave the following answers:

"Q. By the time you went to rehab back in '98, you knew that your leg problem was associated with your surgeries, didn't you?

A. Um-hum.

Q. Yes?

A. Yes.

Q. You knew you didn't have the surgery on your legs, right?

A. Right.

Q. You knew that you hadn't had prior problems with your legs.

A. Right.

Q. You knew that the thing that brought you into the hospital first on September 2nd was your abdomen and not your legs.

A. Right.

Q. You had never had any problems whatsoever with your legs before September 16th, true?

A. True.

Q. So there was no question in your mind that this new problem with your legs was because of the surgeries you had undergone, surgery or surgeries you had undergone?

8

A. That all of my physical problems were a result of that, yes.

Q. But specifically your legs were a result of the surgery, right?

A. Right."

In his deposition, Segran Nair was asked the following questions and gave the following answers:

"Q. And isn't it the truth that certainly by March of 1999 you believed that something that Dr. Bloom had done during the surgery in September of 1998 had caused this problem with her legs, isn't that true?

***

A. Any normal person would think that a wife was walking and went to surgery of the stomach and come out not walking. So, of course, anybody would think there's got to be something, something went wrong.

Q. And that's what you thought--

A. That's what I'm thinking.

Q. --as early as March of 1999, right?

A. Of course, yes.

***

Q. Did you ask Dr. Doolas what would happen if you hired a lawyer

or is that something your wife said?

A. No. I said that--he was upset at me that I asked him what happened, like nobody knows what happened to my wife's leg, why she's not walking. And that's when we said well, nobody is answering our questions, so we have to use, you know, legal resources to find out will my wife ever walk again or what's wrong with her. How come she went for the surgery of the stomach now she's coming out and she can't walk; that's what we want.

Q. Now I know you're not a doctor--

A. Right.

Q. --but as of this time in March of 1999 it was your personal belief that something happened during the surgery that Dr. Bloom had performed to cause your wife's problems with her legs, is that true?

A. I don't know who causes it, but I knew something went wrong.

***

Q. So, you had an understanding in the spring of 2000 that Miss Zelner expected to be paid based upon a recovery she would make on your behalf in a lawsuit?

A. Right. Well, she told me that she has to send it to a doctor and the doctor needs to be compensated, and I said I don't have any money right now. And that's when we signed an agreement.

Q. So, did you have an understanding that by the spring of 2000 Miss Zelner was going to begin an investigation into the filing of a potential lawsuit on your behalf and on behalf of your wife?

A. Yes.

Q. And that was in April or May of 2000?

A. Yes, somewhere."

The plaintiffs rely on Young v. McKiegue, 303 Ill. App. 3d 380, 708 N.E.2d 493 (1999). In Young, the plaintiff's husband was treated for pneumonia and died on the day he was to be discharged from the hospital. The plaintiff requested an autopsy because she suspected inappropriate medical care contributed to her husband's death. Young, 303 Ill. App. 3d at 383. The autopsy report indicated the death was from complications of pneumonia. Plaintiff retained an attorney to investigate the nature of decedent's death. Plaintiff's attorney received two physician's reports, on August 17, 1994, and on February 16, 1995, both concluding the treating physicians deviated from the standard of care by failing to recognize decedent's cardiac distress. Young, 303 Ill. App. 3d at 384. In her complaint for wrongful death, plaintiff contended it was not until receipt of the second report in February 1995 that she knew decedent's death was possibly caused by a misdiagnosed cardiac event. The trial court dismissed plaintiff's claims against several later-added

11

defendants, finding the limitations period began in December 1993 when plaintiff received the medical records and retained a lawyer. <u>Young</u>, 303 Ill. App. 3d at 385.

The appellate court held the plaintiff knew or reasonably should have known no later than August 17, 1994, when her attorney received the first physician's report, that her husband's death was wrongfully caused. Plaintiff's claims not filed within two years of that date were time-barred. <u>Young</u>, 303 Ill. App. 3d at 389. The court further held an issue of fact existed as to whether the plaintiff possessed the requisite knowledge before August 1994. <u>Young</u>, 303 Ill. App. 3d at 389. The court said:

> "[S]uspecting wrongdoing is not the same as knowing that a wrong was probably committed. Furthermore, whether a party possessed the requisite constructive knowledge contemplates an objective analysis of the factual circumstances involved in the case. Thus, the relevant determination rests on what a reasonable person should have known under the circumstances, and not on what the particular party specifically suspected." <u>Young</u>, 303 Ill. App. 3d at 390, citing <u>LaManna v. G.D.</u>

12

1-06-2448

Searle & Co., 204 Ill. App. 3d 211, 218-19, 561 N.E.2d 1170 (1990).

In Young, the plaintiff was told her husband died from complications of pneumonia, and she merely suspected he may have received inappropriate medical care. In this case, the plaintiffs testified they knew the injuries to Josetta's legs were caused by the surgery on September 15, 1998, and they knew the leg symptoms were not a normal outcome from abdominal surgery. Segran Nair testified plaintiffs retained a lawyer in the Spring of 2000 for the purposes of filing a lawsuit against the responsible physicians. We find that by Spring 1999, or, at the latest, by Spring 2000, when plaintiffs retained two attorneys to investigate a claim on their behalf, plaintiffs knew or reasonably should have known of their injuries and that the injuries were wrongfully caused.

There is no requirement that the plaintiff must discover the full extent of her injuries before the statute begins to run. Hoffman v. Orthopedic Systems, Inc., 327 Ill. App. 3d 1004, 1010, 765 N.E.2d 116 (2002). In Hoffman, 327 Ill. App. 3d at 1010, the court found it significant that plaintiff retained an attorney within six months of her operation, "demonstrating that she then was on inquiry as to whether the injury was wrongfully caused, thereby commencing the two-year limitations period within which

13

1-06-2448

to take appropriate legal action." A person knows or reasonably should know an injury is "wrongfully caused" where he or she possesses "sufficient information concerning [an] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." Knox College, 88 Ill. 2d at 416. At that point, it is plaintiff's burden to inquire further about the existence of a cause of action. Witherell, 85 Ill. 2d at 156.

In so holding, we make no finding that plaintiff's injury was caused by a sudden, traumatic event. "The classification of an injury as 'traumatic' or 'nontraumatic' merely aids in the determination of when the plaintiff discovered, or should have discovered, that the injury was caused by the wrongful conduct of a defendant." Pszenny v. General Electric Co., 132 Ill. App. 3d 964, 966, 478 N.E.2d 485 (1985). Regardless of how Josetta's injuries are classified, by the time plaintiffs consulted with two attorneys, plaintiffs knew or reasonably should have known their injuries were wrongfully caused. Accordingly, plaintiffs' complaint was filed more than two years after the limitations period began and should have been dismissed. See 735 ILCS 5/13-212(a) (West 2004). We affirm the trial court's order granting summary judgment to the defendants.

Affirmed.

GARCIA and R. GORDON, JJ., concur.

14

1-06-2448

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

(Front Sheet to be Attached to Each Case)

| Please use following form: | JOSETTA NAIR and SEGRAN NAIR, |
|---|---|
| | Plaintiffs-Appellants, |
| Complete TITLE of Case | v. |
| | ALLEN BLOOM, M.D., MELVIN BOULE, M.D., and RUSH-COPLEY MEMORIAL HOSPITAL and THE RUSH SYSTEM FOR HEALTH, |
| | Defendants-Appellees. |

| Docket Nos. | No. 1-06-2448 |
|---|---|
| COURT | Appellate Court of Illinois First District, 1st Division |
| Opinion Filed | June 23, 2008 |
| | (Give month, day and year) |

| JUSTICES | JUSTICE WOLFSON delivered the opinion of the court: |
|---|---|
| | GARCIA, and R. GORDON, JJ., concur. |

| APPEAL from the Circuit Court of Cook County; the Hon._____, Judge Presiding. | Lower Court and Trial Judge(s) in form indicated in margin: |
|---|---|
| | Appeal from the Circuit Court of Cook County. |
| | The Hon. Donald J. Suriano, Judge Presiding. |

| For APPELLANTS, John Doe, of Chicago. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel.  Indicate the word NONE if not represented. |
|---|---|

1-06-2448

For APPELLEES,
Smith and Smith,
of Chicago

For Appellants, Lionel Jean-Baptiste, JEAN-BAPTISTE &
ASSOCIATES, of Evanston.

Joseph Brown,
of counsel).

For Appellees - Rush-Copley Memorial Hospital and The Rush
System for Health: HINSHAW & CULBERTSON LLP, of Chicago.
(Joshua G. Vincent, Peter A. Walsh, and David A.
Sorensen, of Counsel.)

Also add attor-
neys for third-
party appellants
and/or appellees.

For Appellee Melvin Boule, M.D.: Carmel M. Cosgrave,
Michael Resis and Linda F. Newman, SMITH AMUNDSEN LLC,
of Chicago.

For Appellee Allen Bloom, M.D.: Lawrence Helms, Kevin
Boyle and Elizabeth Bruer, SWANSON, MARTIN & BELL, LLP,
of Chicago.

(USE REVERSE SIDE IF NEEDED)