2015 IL App (1st) 141952

No. 1-14-1952

Opinion filed May 21, 2015

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| GABRIELLE HEREDIA, | ) | |
| | ) | Appeal from the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County, Illinois, |
| | ) | County Department, Law Division. |
| v. | ) | |
| | ) | No. 13 L 04302 |
| VIRGINIA CARROLL O'BRIEN, M.D., HANDE | ) | |
| TUNCER, M.D., and RUSH UNIVERSITY | ) | The Honorable |
| MEDICAL CENTER, | ) | John H. Ehrlich, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.

Justices Howse and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    This is an appeal from the circuit court's order dismissing a medical malpractice action filed by the plaintiff, Gabriella Heredia, against the defendants, two hematologists, Dr. Virginia Caroll O'Brien (hereinafter Dr. O'Brien) and Dr. Hande Tuncer (hereinafter Dr. Tuncer), and their employer, Rush University Medical Center (hereinafter Rush), arising from the plaintiff's hospitalization and treatment at Rush in the spring of 2009. The cause of action was dismissed on the basis that it was not commenced within the two-year statutory limitations period set forth in section 13-212(a) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/13-212(a) (West

2010)).  On appeal, the plaintiff argues that the trial court erred in dismissing her action as untimely because her complaint was filed within two years of the date on which she first learned or should have learned through the exercise of reasonable diligence that her injuries were sustained as a result of the negligence of the hematologists involved in her treatment.  For the reasons that follow, we affirm the judgment of the circuit court.

¶ 2                                    I.  BACKGROUND

¶ 3        The record reveals the following undisputed facts and procedural history.  The plaintiff, who was in her thirties and suffered from antiphospholipid antibody syndrome (APS)[1] and lupus, was admitted to Rush on April 24, 2009, for a stroke and was treated there until July 21, 2009.  Prior to her hospitalization, the plaintiff had been prescribed and was using several anticoagulant medications as a result of a stroke she had suffered at age 20.  During her hospitalization at Rush, on May 6, 2009, the plaintiff, underwent a transjugular renal (or kidney) biopsy, after which she was readministered blood-thinning therapy, including the medication Lovenox.

¶ 4        Several days after her surgery, the plaintiff suffered a large hemorrhage from the area of the biopsied kidney, which had become infected.  As a result, the plaintiff further developed renal and respiratory failure, multiple abscesses, aspiration pneumonia, and other serious injuries and complications for which she continued to require inpatient treatment years after her release from Rush.

¶ 5        As a result, On December 30, 2010, the plaintiff filed her first complaint (hereinafter the first

---

[1] An autoimmune, hypercoagulable disorder caused by antiphospholipid antibodies, which attack and damage tissues and cells and cause blood clots to form in the body's arteries and veins.

action), naming as the defendants the two radiologist surgeons involved in her transjugular renal biopsy on May 6, 2009, Dr. Vivek Mishra (hereinafter Dr. Mishra) and Dr. Sudheer Paruchuri (hereinafter Dr. Paruchuri)), and their employers, Affiliated Radiologists, S.C, and Rush. The plaintiff asserted that the defendants, were negligent, *inter alia*, in: (1) performing the transjugular kidney biopsy, (2) carelessly causing damage to the plaintiff's bowel and right kidney during the performance of that biopsy, (3) carelessly failing to provide proper and timely monitoring for hemorrhage and infection to the plaintiff following that biopsy, (4) carelessly failing to provide proper and timely treatment for injuries sustained as a result of that biopsy; and (5) otherwise being "careless and negligent in treating" the plaintiff. The plaintiff asserted that as a direct and proximate result of the aforementioned actions she suffered serious and permanent injuries of a personal and pecuniary nature, and she requested damages in excess of $50,000 against each of the defendants.

¶ 6      In support of her complaint, pursuant to section 2-622 of the Code (735 ILCS 5/2-622 (West 2010)), the plaintiff attached an attorney's affidavit and report from a reviewing expert radiologist. That report stated that the expert had reviewed the plaintiff's medical records from Rush and that it was his opinion based on those records that the plaintiff had a reasonable and meritorious cause of action in that the defendants breached the applicable standard of care in the manner asserted in the plaintiff's complaint.

¶ 7      On March 28, 2011, and June 2, 2011, the defendants in the first action filed their answers to the plaintiff's complaint denying the allegations therein. The parties subsequently proceeded with discovery.

¶ 8      During discovery, and more than two years after filing of her first action against Rush, on

April 26, 2013, the plaintiff filed her instant action. This time, in addition to Rush, as the defendants, the plaintiff named Dr. O'Brien and Dr. Tuncer, the two hematologists who treated her after the transjugular kidney biopsy was performed at Rush on May 6, 2009. In her complaint, the plaintiff alleged that the defendants-hematologists and Rush (as their employer) were negligent, *inter alia*, in: (1) prescribing, ordering and administering certain blood thinners and combinations of blood thinners following her transjugular renal biopsy; (2) failing to properly monitor the plaintiff while administering those blood thinners; (3) failing to reverse the effects of the blood thinners in a timely manner; and (4) carelessly causing the peritoneal hemorrhage and damaging the plaintiff's right kidney. The plaintiff asserted that as a direct and proximate cause of the aforementioned acts or omissions by the defendants, she suffered "a large perinephric hematoma, renal failure, right kidney necrosis, respiratory failure, peritoneal abscess, aspiration pneumonia, multiple fistulas and other injuries."

¶ 9     In support of her complaint, pursuant to section 2-622 of the Code (735 ILCS 5/2-622 (West 2010)), the plaintiff again attached an attorney's affidavit and report from a reviewing expert physician attesting that the expert had been consulted in reviewing her claim and that it was his opinion, based upon a review of the plaintiff's medical records documenting her treatment at Rush, that the plaintiff had a reasonable and meritorious cause of action and that the defendants breached the applicable standard of care in the manner asserted in the plaintiff's complaint.

¶ 10    On June 24, 2013, the plaintiff moved to consolidate her 2010 and 2013 causes of action, contending that they involved the same inpatient hospitalization witnesses and evidence. On July 2, 2013, the circuit court granted that motion and consolidated the cases.

¶ 11    On July 26, 2013, the defendants in the instant action (the hematologists and Rush), filed a

section 2-619 motion to dismiss (735 ILCS 5/2-619 (West 2010)) arguing that the cause of action was barred by the two-year statute of limitations set forth in section 13-212(a) of the Code (735 ILCS 5/13-212(a) (West 2010)). In their motion, the defendants argued that the two-year limitations period on the plaintiff's claims commenced on June 21, 2009, when she was discharged from Rush, or at the very latest, at the time she filed her first medical malpractice action on December 30, 2010. The defendants contended that since the plaintiff alleged the same injuries in her 2010 and her 2013 causes of action, she must have been on notice of all potential claims, including those she raised against the treating hematologists, no later than December 30, 2010. Accordingly, they asserted that the plaintiff's April 26, 2013, complaint was time-barred.

¶ 12   The plaintiff filed her response to the motion to dismiss on August 30, 2013. Therein, she argued that she was unaware of the hematologists' negligence until January 11, 2012, when one of the biopsy surgeons and a defendant in the initial cause of action, Dr. Paruchuri, gave his deposition. The plaintiff pointed out that during that deposition, Dr. Paruchuri testified that the blood thinner Lovenox, in combination with other anticoagulants (namely, heparin and Coumadin), was responsible for the large hemorrhage coming from the plaintiff's right kidney. Dr. Paruchuri also testified that he discovered the connection between Lovenox and the hemorrhage when he reviewed the plaintiff's medical chart, including her radiological scans, in preparation for his deposition. In support, the plaintiff attached portions of Dr. Paruchuri's deposition stating that "the bleed corresponded with the onset of the administration of Lovenox."

¶ 13   In addition, in her response to the motion to dismiss, the plaintiff pointed to several other reasons for why, even with the exercise of due diligence, she could not have been aware of the hematologists' contribution to her injuries prior to Dr. Paruchuri's deposition. Specifically, the plaintiff alleged: (1) that her medical records are 17,000 pages long (mostly due to her continued

inpatient treatment necessitated by the complications of her transjugular renal biopsy); and (2) that during her 88-day stay at Rush (between April 24, 2009 and July 21, 2009) she was administered hundreds of medications, including the blood thinner Lovenox. Under this record, the plaintiff contended that her instant action filed on April 26, 2013, was well within two years of the date when she reasonably could have known that her injuries were caused by the actions of the hematologists.

¶ 14    On November 20, 2013, after having reviewed the briefs and heard the argument of both Parties, the circuit court granted the defendants' motion to dismiss the 2013 action. In doing so, the court noted that "it [was] fairly obvious that the facts [were] undisputed in this case," namely, that the plaintiff was aware of her injuries and that they were wrongfully caused when she filed her first complaint on December 30, 2010. The court noted that there was no issue of fact, since the expert physician upon whom the plaintiff relied to attest to the legitimacy of her initial 2010 complaint averred that he reviewed the plaintiff's medical records, which, albeit 17,000 pages long, would have contained the fact that the patient was administered Lovenox with the other coagulants after the May 6, 2009, renal biopsy. The court, however, invited the plaintiff to provide additional evidence, if she could, in a motion to reconsider, showing that the expert who attested to the legitimacy of her initial complaint did not have all of the facts necessary to be placed on notice of the contribution of improperly administered blood thinners in causing the plaintiff's injuries.

¶ 15    On December 19, 2013, the plaintiff filed a motion to reconsider. In that motion, she alleged for the first time that the court should find that there remains a genuine issue of material fact as to whether she could have reasonably known that the blood-thinning therapy caused or contributed to her injuries prior to Dr. Paruchuri's deposition. In support, the plaintiff initially

reiterated that the 9,414-page hospital chart that documented her 88-day hospitalization at Rush, was part of her overall 17,000-page medical record and was examined by the plaintiff's reviewing experts in filing her initial 2010 complaint. The plaintiff then attempted to point out several "omissions and inaccuracies" in those hospital records compared to Dr. Paruchuri's subsequent deposition testimony, which created a genuine issue of material fact as to whether her expert could have determined that the hematologists' administration of Lovenox contributed to her injuries. First, she noted that while the operative report from her kidney biopsy stated that there were "no complications" during the procedure, Dr. Paruchuri testified in his deposition that the plaintiff's kidney capsule was "probably traumatized" and was perforated by him with a cutting needle during that biopsy. Second, the plaintiff asserted that, while her medical records stated that her right kidney hematoma started three to four days after her biopsy, and that she was not given Lovenox until five days after the procedure, Dr. Paruchuri testified that the kidney hematoma did not start until seven days after the biopsy, on a date which *followed* the start of Lovenox. Third, the plaintiff pointed out that while her chart revealed entries made by numerous medical professionals at Rush stating that her right kidney hematoma was caused by or was a complication of her kidney biopsy, Dr. Paruchuri testified in his deposition that Lovenox, in combination with other medications, was responsible.

¶ 16    In support of her allegations, the plaintiff attached: (1) numerous, but unorganized and Unmarked, pages of her medical records from Rush; (2) portions of Dr. Paruchuri's deposition testimony (mostly taken out of context) to the effect alleged in her motion to reconsider; and (3) an unsigned affidavit allegedly prepared by the same expert physician who signed the plaintiff's section 2-622 (735 ILCS 5/2-622 (West 2010)) report in 2010 and 2012. According to the expert's newest affidavit, after the expert had an opportunity to review Dr. Paruchuri's deposition

testimony, he then went through the patient's medical chart again and found the aforementioned omissions alleged in the plaintiff's motion to dismiss. Specifically, the expert's affidavit alleged, *inter alia*, that the first record of the plaintiff's kidney capsule being perforated by a cutting needle during the kidney biopsy was made in Dr. Paruchuri's deposition and that prior to that there were "no entries" in the plaintiff's medical chart documenting such a perforation.

¶ 17 On May 28, 2014, the circuit court held a hearing on the plaintiff's motion to reconsider. During that hearing, the defendants asserted that the motion should be denied because contrary to the plaintiff's assertion that she did not know of the injury to her kidney prior to Dr. Paruchuri's deposition, the record undisputedly established that the plaintiff's radiological scans, which were available either at the time or immediately after her biopsy and were certainly part of her medical records from Rush, would have shown that the biopsy ruptured the kidney capsule and caused the intra-abdominal hematoma. The defendants argued that the plaintiff never provided a clear answer as to whether she requested those radiological scans or whether those were reviewed by her expert prior to filing her initial complaint.

¶ 18 After hearing arguments by the parties, the circuit court denied the plaintiff's motion to reconsider. In doing so, the court reiterated that the plaintiff had failed to provide additional newly discovered evidence that established that at the time she filed her initial complaint she was without information necessary to place her on notice that the negligent administration of blood thinners (including Lovenox) after the allegedly negligently performed kidney biopsy contributed to her injuries. The court explained that although Lovenox, which has blood-thinning properties, could have worsened the plaintiff's hematoma, there was nothing in the record to show that the intra-abdominal hematoma itself could have been caused solely by the administration of Lovenox. The court further noted that the plaintiff's attempt to distinguish

between the rupture of the renal capsule (as admitted by Dr. Paruchuri's deposition) and the rupture of the renal vein (which was visible on the radiological scans available after the plaintiff's biopsy) was unpersuasive because in either event the rupture caused the hematoma so that the fact that any subsequent administration of Lovenox contributed to the worsening of that hematoma should have been discoverable by the experts in filing the plaintiff's initial 2010 complaint. As the court explained:

"It's the plaintiff's burden to establish their case, and it's their burden to investigate sufficiently to determine if they have a cause of action at all, and that's what was not done. The plaintiff's argument that the medical records in this case were over 15,000 pages is beside the point. That's why you hire experts. Whether it's one interventional radiologist or a team of them. It's the plaintiff's duty to review the records. They were available. *** [E]ven if I assume either way that they either weren't ordered or they were ordered and were not looked at, that doesn't do anything to overcome the standard that the plaintiff knew or should have known the cause of the intra-abdominal hematoma.

So based on that the motion to reconsider will still be denied."

¶ 19                                    II. ANALYSIS

¶ 20        The plaintiff now appeals the dismissal of her cause of action as untimely pursuant to section 2-619(a) of the Code. 735 ILCS 5/2-619(a) (West 2010). A motion to dismiss pursuant to section 2-619 (735 ILCS 5/2-619 (West 2010)) admits the legal sufficiency of the complaint (*i.e.*, all facts well pleaded), but asserts certain defects, defenses or other affirmative matters that appear on the face of the complaint or are established by external submissions that act to defeat the claim. *Relf v. Shatayeva*, 2013 IL 114925, ¶ 20; *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). Subsection (a)(5) of section 2-619, pursuant to which defendants' motion was brought,

specifically allows dismissal when "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2010). In ruling on a section 2-619 motion, all pleadings and supporting documents must be construed in a light most favorable to the nonmoving party, and the motion should be granted only where no material facts are in dispute and the defendant is entitled to dismissal as a matter of law. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. The relevant inquiry on appeal is " 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Sandholm*, 2012 IL 111443, ¶ 55 (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993)). Our review the circuit court's grant of a motion to dismiss pursuant to section 2-619 is *de novo*. *Relf*, 2013 IL 114925, ¶ 21.

¶ 21    In the present case, the parties agree that the plaintiff's medical malpractice claims against the defendants are governed by the two-year statute of limitations set forth in section 13-212(a) of the Code (735 ILCS 5/13-212(a) (West 2010)). See *Durham v. Michael Reese Hospital Foundation*, 254 Ill. App. 3d 492, 495 (1993) ("all actions for injury *** predicated upon the alleged negligence of a physician [or hospital] are governed by section 13-212(a)").

¶ 22    Pursuant to section 13-212(a), any claim of malpractice asserted against a physician or hospital must be filed within two years of "the date on which the claimant knew, or through the use of reasonable diligence should have known *** of the existence of the injury or death for which damages are sought ***, but in no event shall such action be brought more than [four] years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." 735 ILCS 5/13-212(a) (West 2010). Our cases have interpreted this language to mean that the two-year malpractice limitations period begins to run when the party knows or reasonably should have known both that an injury occurred and that

it was wrongfully caused.  See *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981); see also *Nair v. Bloom*, 383 Ill. App. 3d 867, 870 (2008) (citing *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415 (1981)); *Saunders v. Klungboonkrong*, 150 Ill. App. 3d 56, 59 (1986).  "Wrongfully caused" does not mean knowledge of a specific defendant's negligent conduct or knowledge that an actionable wrong was committed.  *Steinmetz v. Wolgamot*, 2013 IL App (1st) 121375, ¶ 30 (citing *Castello v. Kalis*, 352 Ill. App. 3d 736, 744-45 (2004)); see also *Young v. McKiegue*, 303 Ill. App. 3d 380, 388 (1999).  Rather, a plaintiff knows or should know his injury was "wrongfully caused" when he "becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved."  (Internal quotation marks omitted.)  *Steinmetz*, 2013 IL App (1st) 121375, ¶ 30; see also *Saunders*, 150 Ill. App. 3d at 60 (quoting *Knox College*, 88 Ill. 2d at 416); see also *Hanks v. Cotler*, 2011 IL App (1st) 101088, ¶ 19 ("the commencement of the limitations period" is tolled "until the potential plaintiff possesses sufficient information concerning his or her injury and its cause to put a reasonable person on notice to make further inquiries").

¶ 23      The law is well settled that once a party knows or reasonably should have known both of the injury and that it was wrongfully caused " 'the burden is upon the injured person to inquire further as to the existence of a cause of action.' "  *Castello*, 352 Ill. App. 3d at 745 (quoting *Witherel,* 85 Ill. 2d at 156); *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶ 23 ("as soon as [the plaintiff] has sufficient information about her injury and its cause to spark inquiry in a reasonable person as to whether the conduct of the party who caused her injury might be legally actionable," the plaintiff has burden to "investigate whether she has a viable cause of action.").  The purpose of this rule is to encourage diligent investigation on the part of potential plaintiffs without foreclosing any claims of which the plaintiffs could not have been aware.  *Mitsias*, 2011

IL App (1st) 101126, ¶ 21. As our supreme court has explained: "In that way, an injured person is not held to a standard of knowing the inherently unknowable [citation], yet once it reasonably appears that an injury was wrongfully caused, the party may not slumber on his rights." *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171 (1981).

¶ 24     In most instances, the time at which a plaintiff knows or reasonably should have known both of the injury and that it was wrongfully caused will be a question of fact. *Nair*, 383 Ill. App. 3d at 870 (citing *Witherell*, 85 Ill. 2d at 156); see also *Castello*, 352 Ill. App. 3d at 744. However, "[w]here it is apparent from the undisputed facts *** that only one conclusion can be drawn, the question becomes one for the court" (*Witherell*, 85 Ill. 2d at 156), and can be resolved as a matter of law, making a section 2-619 involuntary dismissal on statute of limitations grounds appropriate. See *Castello*, 352 Ill. App. 3d at 744 (citing *Witherell*, 85 Ill. 2d at 156); see also *Nair*, 383 Ill. App. 3d at 870; *Saunders*, 150 Ill. App. 3d at 61 ("If only one conclusion can be drawn from the undisputed facts, the question of the timeliness of the plaintiff's complaint is for the court to decide.").

¶ 25     In the present case, the plaintiff argues that the trial court erred when it determined that her 2013 cause of action was filed outside of the two-year statute of limitations (735 ILCS 5/13-212(a) (West 2010)). She asserts that she was faced with two medically distinct causes of injury and could not have discovered the second cause (*i.e.*, the administration of Lovenox) even with due diligence within the two-year limitations period. The plaintiff argues that she became aware of that second cause only after one of the surgeons in her initial complaint (Dr. Paruchuri) was deposed and testified that the blood thinner Lovenox in combination with other medications administered to the plaintiff by the hematologists some time after the biopsy caused the hemorrhage in the plaintiff's right kidney and her remaining resulting injuries. We disagree.

¶ 26    The record in this case establishes that at the very latest at the time the plaintiff filed her initial complaint on December 30, 2010, she knew or reasonably should have known that the negligent performance of the transjugular renal biopsy on May 6, 2009, including the continued administration of the drug Lovenox, was responsible for the massive hemorrhage in her kidney. It is undisputed that the plaintiff's hospital records from Rush note that the plaintiff's right kidney and renal artery were damaged during the biopsy procedure and that she was subsequently treated with different blood thinners, including Lovenox. Numerous hospital records from Rush document "complications" from the "renal hematoma," as well as the administration of anti-coagulants Lovenox and Coumadin as part of the plaintiff's hematology care.

¶ 27    What is more, the plaintiff alleged as much in her 2010 complaint when she asserted that her injuries resulted from the negligent performance of the renal biopsy and the treatment and care she received afterwards at Rush. Specifically, the plaintiff's 2010 complaint alleged that the surgeons responsible for the biopsy, including Dr. Paruchuri, "damaged her right kidney and bowel during the renal biopsy." In addition, that complaint alleged that the surgeons negligently and carelessly failed to provide proper and timely: (1) monitoring for hemorrhage and infection following her kidney biopsy; and (2) treatment to her for the injuries sustained as a result of that procedure.

¶ 28    Under this record, we find disingenuous the plaintiff's contention that her reliance on Dr. Paruchuri's biopsy report, which stated there were "no complications" during the biopsy procedure, precluded her from discovering the hematologists' negligence prior to the surgeon's deposition. The plaintiff clearly did not believe Dr. Paruchuri's biopsy report, since in her 2010 complaint she accused him of negligence in the performance of that biopsy and the follow-up treatment at Rush. Accordingly, under this record, we conclude that the plaintiff certainly was

on inquiry notice of both her injury and the cause of that injury at the time she filed her initial complaint in December 2010, so as to trigger the running of the two-year statute of limitations and bar her from filing the 2013 complaint. See 735 ILCS 5/13-212(a) (West 2010).

¶ 29       In reaching this decision, we have found the holdings in *McCormick v. Uppuluri*, 250 Ill. App. 3d 386 (1993), and *Wells v. Travis*, 284 Ill. App. 3d 282 (1996), instructive. In *McCormick*, the court held that a patient's cause of action for medical malpractice against the physician who treated his kidney obstruction in 1984 accrued at time the patient filed his initial 1985 malpractice action against two other doctors and the hospital where he was treated. *McCormick*, 250 Ill. App. 3d at 391. The court therefore concluded that the patient's subsequent 1988 cause of action against the physician was time-barred by the two-year statute of limitations, notwithstanding the patient's contention that he did not know of the physician's negligence until 1987. *McCormick*, 250 Ill. App. 3d at 391. The court held that the patient must have had sufficient information when he filed his initial 1985 action because the physician's identity was disclosed in the medical records, which the patient possessed prior to filing his 1985 action, so that any reasonable discovery would have included ascertaining the physician's involvement. *McCormick*, 250 Ill. App. 3d at 391. As the *McCormick* court explained, "the running of the limitations clock is not postponed until [the patient] first obtains knowledge of [the physician's] negligent conduct" but, rather, commences when he has "sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. [Citation.]" (Internal quotation marks omitted.) *McCormick*, 250 Ill. App. 3d at 391.

¶ 30       The court reached a similar result in *Wells*, 284 Ill. App. 3d 282. In that case, the plaintiff

filed a malpractice action against one of two physicians involved in the treatment of the deceased. *Wells*, 284 Ill. App. 3d at 284. Over two years later, the plaintiff amended her complaint to add the second physician to her action, asserting that she did not file suit against him earlier because her section 2-622 expert's report had opined that only the first physician had been negligent. *Wells*, 284 Ill. App. 3d at 286. The plaintiff explained that she did not know and could not have reasonably known of the second physician's negligence until the first physician was deposed and his expert implicated the second physician. *Wells*, 284 Ill. App. 3d at 286. Since the plaintiff filed her amended complaint within two years of that deposition, she asserted that her amended complaint was timely filed. *Wells*, 284 Ill. App. 3d at 286.

¶ 31    The appellate court disagreed and dismissed the amended complaint as time-barred by the two-year statute of limitations articulated in section 13-212 of the Code. *Wells*, 284 Ill. App. 3d at 287-92 (citing 735 ILCS 5/13-212 (West 1994)). The court stated that the two-year limitations period commenced on the date that the plaintiff received her 2-622 expert report implicating the first physician. *Wells*, 284 Ill. App. 3d at 287. Rejecting the plaintiff's assertion that knowledge that an injury was wrongfully caused requires knowledge of a specific defendant's negligent conduct, the court reiterated that "the statute of limitations begins to run when 'the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.' [Citation.]" *Wells*, 284 Ill. App. 3d at 287. The court then held that the plaintiff was put on inquiry to determine whether actionable conduct was involved, upon receipt of her expert's section 2-622 report, regardless of whom the expert identified as the responsible party. *Wells*, 284 Ill. App. 3d at 287.

¶ 32    Applying the rationale of *McCormick* and *Wells* to the present case, it is apparent that the

plaintiff cannot be heard to argue that she did not posses sufficient knowledge on December 30, 2010, concerning her injuries and their cause to put a reasonable person on inquiry to determine whether actionable conduct was involved. As already articulated above, it is undisputed that the plaintiff here was in possession of a report of her own expert concluding that the conduct of the surgeons responsible for her kidney biopsy and subsequent treatment at Rush departed from acceptable medical standards. The plaintiff's initial cause of action asserted negligence in the biopsy procedure followed by bleeding complications, which necessarily implicated her subsequent hematology care. The plaintiff had two years from the date of her expert's report in the initial cause of action to conduct her inquiry to determine whether, and against whom, a lawsuit could be filed. Her failure to do so adequately cannot excuse the running of the statute of limitations.

¶ 33     In reaching this conclusion we have considered the decisions in *Mitsias*, 2011 IL App (1st) 101126, and *Neade v. Engel*, 277 Ill. App. 3d 1004 (1996), cited to by the plaintiff and find them inapposite.

¶ 34     In *Mitsias*, the plaintiff, a patient who was diagnosed with the destruction of cartilage in her shoulder joint after having orthopedic surgery, initially brought malpractice claims against the physicians who performed her surgery. *Mitsias*, 2011 IL App (1st) 101126, ¶ 2. Over two years later, she added a products liability claim against the manufactures of pain pumps installed in her shoulder during that surgery. *Mitsias*, 2011 IL App (1st) 101126, ¶ 3. The manufacturers filed a motion to dismiss on the basis of timeliness. *Mitsias*, 2011 IL App (1st) 101126, ¶ 4. After the circuit court granted that motion, the plaintiff appealed. *Mitsias*, 2011 IL App (1st) 101126, ¶ 4.

¶ 35     Contrary to the plaintiff's assertion, in reversing the circuit court's order in *Mitsias*, the

appellate court explicitly limited the issue on review to whether the statute of limitations should be tolled where a plaintiff is aware of one potential wrongful cause of her injury but she does not yet know, "*nor could she* reasonably discover" a second potential wrongful cause, because "*the causal link was as yet unknown to science.*" (Emphases added.) *Mitsias*, 2011 IL App (1st) 101126, ¶¶ 19, 28. Unlike in *Mitsias*, in the present case, the plaintiff's injury (*i.e.*, any potential complications of blood-thinning therapy after her kidney biopsy) was not something yet unknown to science; nor does the plaintiff attempt to argue that it was. In fact, as already articulated above, the plaintiff's initial 2010 complaint establishes that she knew of her bleeding injury, as well as that she was receiving blood-thinning therapy, when she filed her initial cause of action. Accordingly, her injury, unlike that of the plaintiff in *Mitsias*, was not "inherently unknowable" so as to toll the statute of limitations. (Internal quotations omitted.) *Mitsias*, 2011 IL App (1st) 101126, ¶ 29.

¶ 36　　We similarly find *Neade*, 277 Ill. App. 3d 1004, distinguishable. In that case, the court tolled the statute of limitations because the defendant's overt fraud caused the plaintiff to fail to discover that that defendant had wrongfully caused the decedent's injury. *Neade*, 277 Ill. App. 3d at 1004. In *Neade*, the plaintiff filed a malpractice action against the decedent's primary physician less than two years after the decedent's death, but waited over two years to file a lawsuit against the defendant-physician, who had interpreted the decedent's EKG and upon which her primary physician had relied in advising treatment. *Neade*, 277 Ill. App. 3d at 1004.

¶ 37　　On appeal from the dismissal of that amended complaint, the plaintiff argued that she could not have reasonably known of the defendant-physician's contribution to her injuries until she learned the results of an expert's discovery deposition. *Neade*, 277 Ill. App. 3d at 1004. During that expert's discovery deposition, the expert reviewed the EKG test interpreted by the defendant-

physician and discovered that he had openly lied about the EKG, stating that it was "normal" when it was obviously not. *Neade*, 277 Ill. App. 3d at 1007. In reversing the dismissal of the amended complaint, the appellate court observed that the defendant-physician himself had obstructed the plaintiff's attempts to ascertain whether she had a cause of action against him. *Neade*, 277 Ill. App. 3d at 1006. The court found relevant that the defendant had been subpoenaed for a deposition scheduled less than two years after the decedent's death, but had refused to appear until after the two years expired. *Neade*, 277 Ill. App. 3d at 1006. In addition, the defendant had purposely lied at his own deposition and provided inaccurate information in order to prevent the plaintiff from discovering a claim against him. *Neade*, 277 Ill. App. 3d at 1006. Accordingly, under that record, the court in *Neade* found that with the utmost diligence, the plaintiff could not have learned of the defendant-physician's negligent contribution to the decedent's injuries until after his sustained attempts and concealment were exposed, thereby justifying the tolling of the limitations period. *Neade*, 277 Ill. App. 3d at 1006.

¶ 38        Unlike in *Neade*, nothing in the record before us indicates that the defendants-hematologists did anything to prevent the plaintiff from discovering what purported negligent acts performed by them led to her injuries. The record contains no documentation, nor does the plaintiff point to any, authored by the defendants-hematologists that could have misled the plaintiff or were otherwise inaccurate. In fact, as already discussed above, all the information the plaintiff required to identify any cause of action against the defendants-hematologists was readily available to her (and part of her medical records from Rush) by the time she field her initial 2010 cause of action. Similarly, we find misplaced any attempt by the plaintiff to argue that the inaccuracy of Dr. Paruchuri's documentation of his biopsy procedure is analogous to the actions of the defendant in *Neade*. As already noted above, the plaintiff herself gave no credence to that

18

biopsy report, when in 2010 she filed her negligence claim against Dr. Paruchuri alleging that he carelessly ruptured, *inter alia*, her right kidney.

¶ 39    Accordingly, under the record before us, we find that, at the very latest, when she filed her 2010 complaint, the plaintiff had sufficient information to be placed on notice of any injuries and that those injuries were wrongfully caused so as to trigger the running of the statute of limitations. As such, the limitations period expired on December 30, 2012, and her cause of action against the defendants-hematologists filed on April 26, 2013, is time-barred.

¶ 40                            III.  CONCLUSION

¶ 41    For the aforementioned reasons, we affirm the judgment of the circuit court.

¶ 42    Affirmed.